[No. B236714. Second Dist., Div. Eight. Oct. 2, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD A. CLYTUS, Defendant and Appellant.

## COUNSEL

Kari E. Hong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Attorney General, Victoria B. Wilson and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRIMES, J.**—Defendant Donald A. Clytus was sentenced in 2010 to a term of three years eight months in state prison after pleading no contest to unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)) and identity theft (Pen. Code, § 530.5, subd. (a)).[1] The trial court suspended execution of sentence and granted three years' probation. Defendant did not comply with the terms of his probation, and the court revoked probation. At a probation violation hearing held October 14, 2011, defendant admitted violating his probation. The trial court declined to reinstate probation and executed the previously suspended sentence, ordering defendant to serve his term in state prison.

The sole question raised on appeal is whether the Criminal Justice Realignment Act of 2011 (hereafter Realignment Act or Act) (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1; § 1170, subd. (h)), which "[r]ealign[ed] low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs" (§ 17.5, subd. (a)(5)), permitted the trial court to order defendant's sentence to be served in prison. When the court imposed and suspended sentence in 2010, all felony sentences were served in prison. However, when the sentence was executed, the Realignment Act prescribed that punishment for defendant's felony convictions shall be served in county jail. We conclude that a trial court executing a suspended sentence for a probation violation on and after October 1, 2011, the effective date of the Realignment Act, has no discretion to send to prison a defendant who qualifies under the Act to serve the sentence in county jail.

## DISCUSSION

■ The Realignment Act "enacted sweeping changes to long-standing sentencing laws," including replacing prison commitments with county jail commitments for certain felonies and eligible defendants.[2] Section 1170, subdivision (h)(6) specifies the Act will be effective for all persons sentenced on or after October 1, 2011. In enacting the realignment legislation, the Legislature declared: "Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in improved public safety. [¶] . . . California must

---

[1] All further undesignated statutory references are to the Penal Code.

[2] See appendix A, *post*, pages 1011–1016, for the Judicial Council of California Advisory Committee Report, Criminal Justice Realignment: Abstract of Judgment Forms (Nov. 17, 2011).

reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system. [¶] . . . Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society." (§ 17.5, subd. (a)(3)–(5).)

The "justice partners" responsible for implementing the Realignment Act, including judges, prison and jail authorities, parole and probation officers, and others, have encountered uncertainty in interpreting some of its terms. An ad hoc steering committee, including the chair of the Trial Court Presiding Judges Advisory Committee, the chair of the Court Executives Advisory Committee, and other subject matter experts, with the assistance of staff in the Administrative Office of the Court's (AOC) Office of the General Counsel and the Office of Governmental Affairs, prepared a document offering answers to frequently asked questions about the Act. The AOC created a Web site for publication of the work of this ad hoc group, called the Criminal Justice Realignment Resource Center. The center offers information, and updates its Web site from time to time, with the cautionary statement that its proffered answers "are not to be construed as legal opinion or advice." (Crim. Justice Realignment Resource Center, Frequently Asked Questions <http://www.courts.ca.gov/partners/892.htm> [as of Oct. 2, 2012].)

The question of where a defendant will serve a felony sentence if, before October 1, 2011, the court imposed and suspended execution of a sentence to state prison for a crime now punishable in county jail and, after October 1, 2011, the court revoked probation and executed the sentence, has been an uncertain issue on which there was no legally binding authority. The unofficial answer of the Criminal Justice Realignment Resource Center posted on the Web site in October 2011 was, "There is no clear answer," and it may be "[l]ikely the defendant will serve the term in county jail," while acknowledging the "traditional rule is that once imposed, a suspended sentence may not later be modified. (*People v. Howard* (1997) 16 Cal.4th 1081, 1095 [68 Cal.Rptr.2d 870, 946 P.2d 828].)" (See appen. B, *post*, pp. 1017–1027, for text of the 2011 Criminal Justice Realignment Frequently Asked Questions (Oct. 3, 2011).)

██ We conclude that a trial court executing a suspended sentence as punishment for a probation violation on and after October 1, 2011, has no discretion to send to prison a defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h). We rest our conclusion on basic statutory interpretation and the absence of any language in the Realignment Act to suggest a contrary intent or purpose. As explained below, we do not find the holding or reasoning of *Howard* binds us or even guides us in construing the Realignment Act. Because we rest our opinion on the language of the statute, we will not address defendant's equal protection challenge.

Defendant made a plea bargain for which he was granted probation with a suspended prison sentence. Defendant did not comply with the terms of his probation, and at the October 14, 2011 probation violation hearing, defendant admitted he was in violation of probation, and the court executed the sentence. The court was uncertain whether the Department of Corrections and Rehabilitation or county jail authorities might decide that defendant should serve the term in county jail rather than in prison, since the Realignment Act had become effective only two weeks earlier.

On appeal, it is not disputed that under section 1170, subdivision (h)(2) and (3), the sentence for the felonies of which defendant was convicted shall be served in county jail. Section 1170, subdivision (h)(2) provides that a felony shall be punishable in county jail except as provided in subdivision (h)(3). Subdivision (h)(3) provides a defendant may not be sentenced to county jail if he has a prior or current California or out-of-state serious or violent felony conviction, is required to register as a sex offender, or is sentenced for a crime with an enhancement for aggravated theft under section 186.11. Defendant here did not commit a prison-eligible crime, and he had no disqualifying previous felony conviction; indeed, he had no previous felony conviction at all.

██ Section 1170, subdivision (h)(6) provides that "[t]he sentencing changes made by the act that added this subdivision [(h)] shall be applied prospectively to any person sentenced on or after October 1, 2011." The plain meaning of this statute is that any sentence executed on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail under section 1170, subdivision (h)(2). Nowhere in the Realignment Act is there any indication the Legislature intended a different result if a prison sentence was imposed and suspended before October 1, 2011, and executed

on or after October 1, 2011. (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 131 [87 Cal.Rptr.2d 594] [statutory interpretation begins by examination of the language of the statute, giving the words their ordinary meaning and considering them in the context of the statutory framework]; *S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379 [46 Cal.Rptr.3d 380, 138 P.3d 713] [" 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' "].)

■ It is certainly true that in this case, defendant was sentenced *before* October 1, 2011, when the court imposed and suspended execution of sentence with probation. But that does not mean defendant was not also a "person sentenced" when the court executed the suspended sentence *after* October 1, 2011. (§ 1170, subd. (h)(6).) Whenever a sentence is imposed and suspended, it may be executed in the future after a revocation of probation if the trial court decides not to reinstate probation. The trial court must make and articulate the reasons for its discretionary choice not to reinstate probation and to execute the sentence, as the trial court did here. We see no reason why we should conclude defendant was a "person sentenced" when the court stayed execution of the sentence but not when the court executed the previously suspended sentence.

■ We recognize that in executing sentence in this case, the trial court had little or no authority to guide it in interpreting the Act. The Realignment Act launched a dramatic and unexpected sea change in felony sentencing for which many criminal justice partners were not fully prepared when the new law became operative in October 2011. However, the trial court was mistaken when it stated that the Department of Corrections and Rehabilitation might decide to send defendant to jail instead of prison. California's Department of Corrections and Rehabilitation has no power to decide whether under the Realignment Act a defendant will serve a sentence in prison or in county jail. The sentencing court must make that determination in conformance with the Realignment Act. (See § 1170, subd. (h)(2) ["a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense"].)

The uncertainty whether section 1170, subdivision (h)(2) applied to a defendant with a prison sentence that was imposed and suspended before October 1, 2011, arose from the rule of *People v. Howard, supra,* 16 Cal.4th 1081 (*Howard*). The sole ground urged by respondent in support of the argument that courts retained power after October 1, 2011, to order a prison

commitment for felonies that are no longer prison eligible is that *Howard* compels that conclusion. In *Howard*, the Supreme Court held that when a court imposes sentence but suspends its execution, and the defendant does not appeal the sentence but accepts it by undertaking probation, then on a later probation revocation, the court has no power to reduce the sentence before committing the defendant to custody. The Supreme Court relied upon section 1203.2, subdivision (c) and California Rules of Court, former rule 435(b)(2) (now rule 4.435(b)(2)),[3] and cited with approval the opinion of the Court of Appeal in *People v. Chagolla* (1984) 151 Cal.App.3d 1045, 1050–1051 [199 Cal.Rptr. 181], which held trial courts are without jurisdiction to modify or change a sentence that was imposed and suspended and are required to order into execution the suspended judgment after revocation of probation. (*Howard*, at p. 1088.) These authorities are clear and well established but do not apply here. The trial court was never asked to impose a different sentence than the sentence that was imposed and suspended when defendant was placed on probation. That sentence was final long before the court revoked defendant's probation.

■ We find *Howard* does not help us decide the entirely different question whether the trial court had jurisdiction to order that defendant serve his sentence in state prison when it executed sentence after October 1, 2011, for felonies that are no longer prison eligible. A case is not authority for a proposition it did not consider. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 [46 Cal.Rptr.3d 606, 139 P.3d 2]; *Bosworth v. Whitmore* (2006) 135 Cal.App.4th 536, 550 [37 Cal.Rptr.3d 560] ["appellate opinions are not authority for unconsidered propositions . . ."].) The *Howard* court could not have anticipated realignment, and the question of where a defendant would be committed, when it decided a sentence is final when imposed and suspended.

■ We are also not persuaded by respondent's argument that the Legislature intended *Howard* to govern when it enacted section 1170, subdivision (h) without specifying what was to happen to a sentence imposed and suspended with probation. We will not assume, in the absence of any authority, that the Legislature acquiesced to judicial precedent when enacting a new law. (See *People v. Brown* (2012) 54 Cal.4th 314, 327–328 [142 Cal.Rptr.3d 824, 278 P.3d 1182].) This is especially true when the precedent addresses an entirely different issue than is addressed by the new law. *Howard* concluded

---

[3] Section 1203.2, subdivision (c) provides that upon revocation of probation, "if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect." Former rule 435(b)(2) of the California Rules of Court, which is nearly identical to rule 4.435(b)(2), provided: " 'If the execution of sentence was previously suspended, the judge shall order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment.' " (*Howard, supra*, 16 Cal.4th at p. 1088, quoting former rule 435(b)(2).)

that a trial court may not modify or change a sentence that was imposed and suspended. (*Howard, supra*, 16 Cal.4th at p. 1088.) ■ In contrast, the Realignment Act does not modify or change the sentence for any felony. The Act directs that the court is to impose a "term described in the underlying offense" and thus preserves the existing triad of terms for felonies (and also clarifies the triad shall be 16 months, or two years or three years when the term is not specified in the underlying offense). (§ 1170, subd. (h)(1) & (2).)

Respondent cites no language in the Realignment Act, nor any legislative history or public policy, in support of the argument that the trial court had authority to order defendant to serve his sentence in state prison instead of county jail after October 1, 2011. Respondent does not contend the prosecutor would not have offered the plea bargain to defendant if the many changes effected by realignment had been anticipated. We refrain from addressing here issues the parties did not ask us to consider, such as whether they might have negotiated their plea agreement differently if they had known defendant would serve his sentence in county jail with supervised release and not parole.

■ We hold only that in executing a sentence on and after October 1, 2011, for a felony that is not prison eligible under the Realignment Act, the sentencing court must order that the defendant be committed to county jail. Sentencing courts have discretion under section 1170, subdivision (h)(5) to impose either a straight jail commitment for the full term of the sentence, or to suspend execution of a "concluding portion of the term," during which time the defendant shall be supervised by the probation department. (§ 1170, subd. (h)(5)(B)(i).) The sentencing court has considerable discretion in imposing such a so-called "split" or "blended" sentence under section 1170, subdivision (h)(5)(B). But, as of October 1, 2011, the court no longer had the power to sentence defendant to prison for vehicle theft and identity theft, because they were no longer prison-eligible felonies. The parties did not address the question whether on remand the court may impose a split sentence rather than a straight jail sentence, and we therefore decline to address that issue as well.

## DISPOSITION

The sentence committing defendant to state prison is vacated. The matter is remanded so that the trial court may conduct a new sentencing hearing in

conformance with the requirements of the Realignment Act and consistent with this opinion. In all other respects, the judgment of conviction is affirmed.

Rubin, Acting P. J., and Flier, J., concurred.

A petition for a rehearing was denied October 19, 2012, and respondent's petition for review by the Supreme Court was denied January 16, 2013, S206685. Werdegar, J., and Corrigan, J., were of the opinion that the petition should be granted.

# APPENDIX

## [APPENDIX A]

### Judicial Council of California • Administrative Office of the Courts

455 Golden Gate Avenue · San Francisco, California 94102-3688
www.courts.ca.gov/policyadmin-invitationstocomment.htm

## INVITATION TO COMMENT
### W12-05

| | |
|---|---|
| **Title**<br>Criminal Justice Realignment: Abstract of Judgment Forms | **Action Requested**<br>Review and submit comments by January 24, 2012 |
| **Proposed Rules, Forms, Standards, or Statutes**<br>Revise forms CR-290, CR-290A, and CR-290.1 | |
| | **Contact**<br>Arturo Castro, 415-865-7702<br>arturo.castro@jud.ca.gov |
| **Proposed by**<br>Criminal Law Advisory Committee<br>Hon. Steven Z. Perren, Chair | |

## Summary

The Judicial Council has revised the abstract of judgment forms (forms CR-290, CR-290A, and CR-290.1) to include sentences under newly added Penal Code section 1170(h) as required by recently enacted criminal justice realignment legislation. Because the realignment legislation became effective October 1, 2011, the Judicial Council approved the form revisions for the earliest possible date, January 2, 2012. Because the form revisions were adopted without a period of public review, the forms are now being circulated for public comment. The Criminal Law Advisory Committee will return to the council with any further recommendations based on comments received.

## Discussion

Recent criminal justice realignment legislation[1] enacted sweeping changes to long-standing sentencing laws effective October 1, 2011, including replacing prison sentences with county jail commitments for certain felonies and eligible defendants, and authorizing courts to impose a period of mandatory supervision upon a defendant's release from county jail under newly added Penal Code section 1170(h)(5)(B).

The realignment legislation also amended Penal Code section 1213, which requires courts to provide custody officials with abstracts of judgments in felony matters. Specifically, Penal Code section 1213 was amended to require courts to provide custody officials with abstracts of

---

[1] Assem. Bill 109 (Committee on Budget; Stats. 2011, ch. 15); Assem. Bill 117 (Committee on Budget; Stats. 2011, ch. 39); ABX1 17 (Blumenfield; Stats. 2011, ch. 12).

judgments in all felony cases resulting in *county jail* commitments under newly added Penal Code section 1170(h).

Felony abstracts of judgments must be "prescribed by the Judicial Council." (Pen. Code, § 1213.5.) If a court uses a minute order in lieu of an abstract, "the first page or pages shall be identical in form and content to that prescribed by the Judicial Council for an abstract of judgment, and other matters as appropriate may be added thereafter." (Pen. Code, § 1213(b).)

Because the Judicial Council abstract of judgment forms did not include information regarding county jail commitments and periods of mandatory supervision under Penal Code section 1170(h)(5)(B), the committee proposed, and the council approved, effective January 2, 2012, the following amendments to forms CR-290, CR-290A, and CR-290.1:

1. Replaced the phrase "prison commitment" with the word "felony" in the titles, headers, and footers of each form;

2. Added check boxes to the headers and item 4 on forms CR-290 and CR-290.1 for courts to note whether the abstracts pertain to prison or jail commitments;

3. Added the phrase "if prison commitment" to the "financial obligations" section on forms CR-290 (item 9a) and CR-290.1 (item 5) to clarify that Penal Code section 2085.5 applies only to prison commitments;

4. Added a data field on forms CR-290 (item 12) and CR-290.1 (item 10) for courts to note the imposition of a period of mandatory supervision under Penal Code section 1170(h)(5)(B);

5. Added a check box to forms CR-290 (item 17) and CR-290.1 (item 15) to note that the court ordered the defendant to be delivered to the county jail; and

6. Renumbered other items accordingly.

The revisions are designed to clarify that the forms now apply to prison *and* felony county jail commitments and to ensure that the forms include information regarding sentences under Penal Code section 1170(h)(5)(B). Comments are sought on these revisions.

FELONY ABSTRACT OF JUDGMENT—DETERMINATE
(NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED)

CR-290

**DRAFT
Not Approved
by the Judicial
Council**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF: | | | |
|---|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA vs.<br>DEFENDANT: | DOB. | | -A |
| AKA: | | | -B |
| CII NO.: | | | -C |
| BOOKING NO : | ☐ NOT PRESENT | | -D |
| FELONY ABSTRACT OF JUDGMENT:<br>☐ PRISON COMMITMENT. ☐ COUNTY JAIL COMMITMENT | ☐ AMENDED<br>ABSTRACT | | |
| DATE OF HEARING | DEPT. NO. | JUDGE | |
| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER ☐ IMMEDIATE SENTENCING | |
| COUNSEL FOR PEOPLE | | COUNSEL FOR DEFENDANT ☐ APPOINTED | |

1. Defendant was convicted of the commission of the following felonies:
   ☐ Additional counts are listed on attachment
   _____ (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO/DAY/YR.) | JURY | COURT | PLEA | TERM (L,M,U) | CONCURRENT | CONSECUTIVE 1/3 VIO/ENT | CONSECUTIVE 1/3 NONVIOLENT | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (REFER TO Item 5) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

4. Defendant sentenced ☐ to prison commitment per PC 1170(a), 1170(h)(3), or 1170.1(a)   ☐ to county jail per PC 1170(h)(1) or (2)
   ☐ per PC 667(b)-(i) or PC 1170.12 (strike prior)
   ☐ per PC 1170(a)(3). Pre-confinement credits equal or exceed time imposed. Defendant ordered to report to local parole office upon release.

5. INCOMPLETE SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |

6. | TOTAL TIME ON ATTACHED PAGES: | | |

7. ☐ Additional indeterminate term (see CR-292).

8. | TOTAL TIME: | | |

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CR-290 (Rev. January 1, 2012)

FELONY ABSTRACT OF JUDGMENT—DETERMINATE

Penal Code,
§ 1213, 1213.5

CR-290

| PEOPLE OF THE STATE OF CALIFORNIA vs DEFENDANT: | | | |
|---|---|---|---|
| -A | -B | -C | -D |

**8. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):**

**a. Restitution Fines:**

Case A: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case B: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case C: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case D: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

**b. Restitution per PC 1202.4(f):**

Case A: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case B: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case C: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case D: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund

☐ *Victim name(s), if known, and amount breakdown in item 23, below. ☐ *Victim name(s) in probation officer's report

**c. Fines:**

Case A: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case B: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case C: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case D: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

**d. Court Security Fee:** $_____ per PC 1465.8. **e. Criminal Conviction Assessment:** $_____ per GC 70373.

**10. TESTING:** ☐ Compliance with PC 296 verified ☐ AIDS per PC 1202.1 ☐ other (specify):

**11. REGISTRATION REQUIREMENT:** ☐ per (specify code section):_____

**12.** ☐ MANDATORY SUPERVISION: Execution of a portion of the defendant's sentence is suspended and deemed a period of mandatory supervision under Penal Code section 1170(h)(5)(B) as follows (specify total sentence, portion suspended, and amount to be served forthwith):
Total: _____ Suspended: _____ Served forthwith: _____

**13. Other orders (specify):**

**14. CREDIT FOR TIME SERVED**

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| A | | | [ ] 2933 [ ] 2933.1 [ ] 4019 | |
| B | | | [ ] 2933 [ ] 2933.1 [ ] 4019 | |
| C | | | [ ] 2933 [ ] 2933.1 [ ] 4019 | |
| D | | | [ ] 2933 [ ] 2933.1 [ ] 4019 | |

| Date Sentence Pronounced | Time Served in State Institution DMH  CDC  CRC |
|---|---|
| | [ ] [ ] [ ] |

**15. IMMEDIATE SENTENCING:** ☐ Probation to prepare and submit a post-sentence report to CDCR per 1203c.
Defendant's race/national origin:_____

**16. EXECUTION OF SENTENCING IMPOSED**
a. ☐ at initial sentencing hearing
b. ☐ at resentencing per decision on appeal
c. ☐ after revocation of probation
d. ☐ at resentencing per recall of commitment (PC 1170(d).)
e. ☐ other (specify):

**17.** The defendant is remanded to the custody of the sheriff ☐ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☐ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ county jail ☐ other (specify):

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| | |

FELONY ABSTRACT OF JUDGMENT—DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM
*(Not to be used for multiple count convictions or for 1/3 consecutive sentences)*

CR-290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF:

| PEOPLE OF THE STATE OF CALIFORNIA vs. DEFENDANT: | DOB: | CASE NUMBER | DRAFT Not Approved by the Judicial Council |
|---|---|---|---|

AKA:

CII NO.:

BOOKING NO.: ☐ NOT PRESENT

FELONY ABSTRACT OF JUDGMENT: ☐ AMENDED ABSTRACT
☐ PRISON COMMITMENT ☐ COUNTY JAIL COMMITMENT

| DATE OF HEARING | DEPT. NO. | JUDGE |
|---|---|---|

| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER ☐ IMMEDIATE SENTENCING |
|---|---|---|

| COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT ☐ APPOINTED |
|---|---|

1. Defendant was convicted of the commission of the following felony.

| | | | | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO /DATE/YEAR) | CONVICTED BY | | | TERM (L, M, U) | TIME IMPOSED | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNT | CODE | SECTION NUMBER | CRIME | | | JURY | COURT | PLEA | | YRS. | MOS. |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|---|

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|

4. Defendant sentenced: ☐ to prison per PC 1170 (a) or (b)(3) ☐ to county jail per PC 1170(h)(1) or (2) ☐ per PC 667(b)-(i) or PC 1170.12 (strike prior) ☐ PC 1170(a)(3). Pre-confinement credits equal or exceed time imposed. Defendant was ordered to report to local Parole Office upon release.

5. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):
Restitution Fine(s). $_____ per PC1202.4 (b) forthwith per PC 2085.5 (prison commitment) $_____ per PC 1202.45 suspended unless parole is $_____ per PC 1202.44 is now due, probation having been revoked.
Restitution per PC1202.4 (f): ☐ $_____ ☐ Amount to be determined in ☐ * victim(s) ☐ Restitution Fund
* ☐ Victim name(s), if known, and amount breakdown in item 8, below. * ☐ Victim name(s) in probation officer's report.
Fine(s): $_____ per PC 1202.5, $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.
☐ Court Security Fee of $_____ per PC 1465.8. ☐ Criminal Conviction Assessment of $_____ per GC 70373.

6. TESTING: a. ☐ Compliance with PC 296 verified b. ☐ AIDS per PC 1202.1 c. ☐ other *(specify):* _____

7. IMMEDIATE SENTENCING: ☐ Probation to prepare and submit a post sentence report to CDCR per PC 1203c. Def't's Race / National Origin _____

8. Other orders *(specify):*

9. TOTAL TIME IMPOSED:

10. ☐ MANDATORY SUPERVISION: Execution of a portion of the total jail time imposed in item 9 is suspended and deemed a period of mandatory supervision under PC 1170(h)(5)(B) as follows: ☐ Suspended portion: _____ ☐ Served forthwith: _____

11. ☐ This sentence is to run concurrent with *(specify):*

12. ☐ REGISTRATION REQUIREMENT: ☐ per *(specify code section):* _____

13. Execution of sentence imposed: a. ☐ at initial sentencing hearing. b. ☐ at resentencing per decision on appeal. c. ☐ after revocation of probation. d. ☐ at resentencing per recall of commitment. (PC 1170(d).) e. ☐ other *(specify):*

14.

| DATE SENTENCE PRONOUNCED | CREDIT FOR TIME SPENT IN CUSTODY TOTAL DAYS. | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | TIME SERVED IN STATE INSTITUTION | | |
|---|---|---|---|---|---|---|
| | | | ☐ 2933 ☐ 2933.1 ☐ 4019 | DWH [ ] | CDCR [ ] | CRC [ ] |

15. The defendant is remanded to the custody of the sheriff ☐ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays. To be delivered to ☐ the reception center designated by the director of the California Department of Corrections and Rehabilitation. ☐ county jail ☐ Other *(specify):*

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|

This form is prescribed under PC 1213 § to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CR-290.1 [Rev. January 2, 2012]

FELONY ABSTRACT OF JUDGMENT—DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM

Penal Code,
§§1170, 1213, 1213.5

A 5

**DRAFT**
**Not Approved**
**by the Judicial**
**Council**

FELONY ABSTRACT OF JUDGMENT
ATTACHMENT PAGE

CR-290(A)

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT:

| -A | -B | -C | -D |
|---|---|---|---|

1. Defendant was convicted of the commission of the following felonies:
This attachment page number: _____

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATES OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY | | | TERM (L,M,U) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE 1/3 NONVIOLENT | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (refer to box G) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | JURY | COURT | PLEA | | | | | | | | YRS | MOS |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | | |
| | | | | | / / | | | | | | | | | | | TOTAL | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | TOTAL |

3 ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

4. TOTAL TIME IMPOSED ON THIS ATTACHMENT PAGE:

Form Adopted for Mandatory Use
Judicial Council of California
CR-290(A) (Rev. January 2, 2012)

FELONY ABSTRACT OF JUDGMENT
ATTACHMENT PAGE

Penal Code, §1213.5

[APPENDIX B]

## 2011 Criminal Justice Realignment
## Frequently Asked Questions

(Revised October 3, 2011[1])

This document provides the Ad Hoc Criminal Justice Realignment Steering Committee's responses to the most frequently asked questions (FAQ) relating to criminal justice realignment. The materials are for informational purposes only, and are not to be construed as legal advice. They will be revised and re-posted as additional information is available. In addition, specialized training materials are available on Serranus.

Contact: crimjusticerealign@jud.ca.gov

### SENTENCING

**1. How does criminal justice realignment change sentencing?**

Criminal justice realignment divides felonies for the purpose of sentencing into three primary groups.

    a. **Felonies sentenced to county jail:** Penal Code[2] section 1170, subdivision (h), provides that the following defendants must be sentenced to county jail if probation is denied:

- Crimes where the punishment is imprisonment in accordance with subdivision (h) of section 1170 without delineation of a specific train; in which case the sentence is 16 months, two, or three years in county jail (section 1170(h)).
- Crimes where the statute now specifically requires punishment in the county jail, either as a straight felony commitment or as an alternative sentence as a wobbler. The length of the term is not limited to 16 months, two, or three years, but will be whatever triad or punishment is specified by the statute (section 1170(h)(2)).

    b. **Felonies excluded from county jail:** Notwithstanding that a crime usually is punished by commitment to the county jail, the following crimes and/or defendants, if denied probation, must be sentenced to state prison: (section 1170(h)(3))

- Where the defendant has a prior or current serious or violent felony conviction under section 1192.7(c) or 667.5(c);
- Where the defendant is required to register as a sex offender under section 290; or

---

[1] Incorporates changes to criminal justice realignment that were enacted on September 21, 2011, by ABx1 17 (Blumenfield), Stats. 2011, ch. 12. The provisions of the bill become operative on October 1, 2011.

[2] All references are to Penal Code unless otherwise specified.

- Where the defendant is convicted of a felony with an enhancement for aggravated theft under section 186.11.

c. **Felonies specifying punishment in state prison:** The Legislature carved out dozens of specific crimes where the sentence must be served in state prison. It will be incumbent on courts and counsel to verify the correct punishment for all crimes sentenced after the effective date of the realignment legislation. Appendix A, "Table of Crimes Requiring Commitment to State Prison" was compiled by Hon. J. Richard Couzens, Judge of the Superior Court of Placer County (Ret.) from many different source documents.

2. **When do the changes to sentencing laws apply?**

   The changes in felony sentencing apply to any person sentenced on or after October 1.

3. **Is there a limit to the length of time a court may sentence a person to county jail under section 1170(h)?**

   No. Nothing in criminal justice realignment limits the *length* of the county jail commitment. The only restrictions on eligibility for county jail commitment are based on the offense or the offender's record. See Answer 1(b), above.

4. **How does criminal justice realignment change awarding of custody credits?**

   Effective October 1, 2011, section 4019 has been amended to provide that most inmates committed to county jail are to receive two days of conduct credit for every two days served. The provisions apply to persons serving a sentence of four or more days, including misdemeanor sentences, a term in jail imposed as a condition of probation in a felony case, pre-sentence credit for some persons sentenced to state prison, persons serving jail custody for violation of state parole or postrelease community supervision, and persons serving a sentence imposed under section 1170(h).

5. **When do the changes to custody credits apply?**

   The changes to custody credits apply to *offenses committed* on or after October 1, 2011.

6. **Is there any period of automatic parole or postrelease supervision for an inmate upon release from county jail on a felony conviction sentenced under section 1170(h)(1) and (2)?**

   No. Persons sentenced under section 1170(h)(1) and (2) to county jail are not automatically released to parole or postrelease supervision upon serving their term — unlike those who serve time in state prison. A form of postrelease supervision can, however, be required in the judge's discretion under section 1170(h)(5); see Question 7.

7. **What is the meaning of section 1170(h)(5)?**

Section 1170(h)(5) was added by AB 117[3] to give the sentencing judge discretion regarding how individuals convicted of felonies who are sentenced to county jail serve their term. The intent behind section 1170(h)(5) is to provide that, for any county jail-eligible felony conviction, the court may commit the defendant to county jail for the straight term allowed by law, or may suspend execution of a concluding portion of that term, during which time the defendant will be supervised by the county probation officer in accordance with the terms, conditions and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. This portion of supervision, if imposed by the court, will be mandatory.

8. **Is the supervision period of a split sentence imposed under section 1170(h)(5)(B) probation?**

No. ABxl 17 amended section 1170 to clarify that the mandatory period of supervision imposed under the so-called "split sentence" authorized under section 1170(h)(5)(B) is not probation.

9. **Do statutes that render certain offenses ineligible for probation—e.g., section 1203.07— prohibit courts from imposing "mandatory supervision" under section 1170(h)(5)?**

No. Because the mandatory supervision under 1170(h)(5)(B) is not probation, existing probation ineligibility provisions should not hinder a judge from imposing the split sentence .

10. **If a statute specifies that the crime is punishable in county jail under section 1170(h), is it still possible to send the defendant to state prison?**

Generally, crimes punishable in county jail may not be punished by a commitment to state prison; the court must sentence to county jail if probation is denied. If a defendant is sentenced to state prison for a qualified felony, however, other charges normally punished in county jail also will be punished in state prison (section 1170.1(a)).

11. **Is there a requirement that the People "plead and prove" any factor that disqualifies a defendant from a county jail commitment?**

The realignment legislation contains no express requirement that the People "plead and prove" any factor that would disqualify a defendant from being sentenced under section 1170(h). It is an open question whether the use of the term "allegation" in section 1170(f) suggests there is such an obligation. The "plead and prove" issue has been raised in the context of factors that disqualify a defendant from certain enhanced custody credit provisions. The credit issue is now before the California Supreme Court.

---

[3] Assem. Bill 117 (Committee on Budget), Stats. 2011, ch. 39.

12. **Will a sentence imposed under section 1170(h) affect the ability of the court to grant a motion to specify a crime as a misdemeanor under section 17(b)?**

A sentence imposed under section 1170(h) will be treated the same as a state prison sentence. Accordingly, if the court imposes a sentence under section 1170(h) and either orders it into execution, or suspends its execution pending satisfactory completion of probation, the court will no longer have the ability to specify the offense as a misdemeanor under section 17(b).

13. **Where will a defendant serve a sentence if prior to October 1, the court imposed and suspended execution of a sentence to state prison for a crime now punishable under section 1170(h), and after October 1 does not reinstate the defendant on probation?**

There is no clear answer. Likely the defendant will serve the term in county jail. The traditional rule is that once imposed, a suspended sentence may not later be modified. (*People v. Howard* (1997) 16 Cal.4th 1081, 1095.) The realignment legislation, however, applies to all sentencing *proceedings* occurring on or after October 1, 2011. Certainly the decision not to reinstate a defendant on probation and order into execution a suspended state prison sentence is a "sentencing proceeding." Furthermore, if the change from a state prison commitment to a county jail commitment is perceived as a less onerous sanction, a defendant may be entitled to the benefits of the change as a matter of equal protection.

14. **Will the provisions of section 1170(d) [recall of a sentence], and 1170(e) [compassionate release] apply to commitments under section 1170(h)?**

Neither subdivision (d) nor (e) of section 1170 mentions section 1170(h) commitments. Likely, however, defendants committed under section 1170(h) would have access to these procedures as a matter of equal protection of the law.

15. **When crimes are committed in county jail following a commitment under section 1170(h), must those crimes be run fully consecutive to the original commitment?**

Section 1170.1, subdivision (c), requires a full consecutive term for crimes committed in state prison, not simply a subordinate consecutive term limited to one-third the mid-base term. Commitments under section 1170(h) are not mentioned.

16. **What effect will section 17(b) have on "attempts" when committed to county jail under section 1170(h)?**

ABx1 17 eliminated an ambiguity regarding the treatment of "attempts" under section 664 by amending section 17(b) to include in the definition of felony a crime punishable in the county jail under section 1170(h) and to eliminate the requirement that the term exceed one year to constitute a felony.

17. **Can section 1385 be used to dismiss the disqualifying factors so as to permit the use of section 1170(h) to commit a defendant to county jail?**
No. Section 1170(f) provides: "Notwithstanding any other provision of this section, for purposes of paragraph (3) of subdivision (h), any allegation that a defendant is eligible for state prison due to a prior or current conviction, sentence enhancement, or because he or she is required to register as a sex offender shall not be subject to dismissal pursuant to Section 1385."

18. **Does the realignment legislation affect the court's ability to consider probation or other alternative forms of punishment?**
No. Section 1170(h)(4) specifically provides that "[n]othing in this subdivision shall be construed to prevent other dispositions authorized by law, including pretrial diversion, deferred entry of judgment, or an order granting probation pursuant to Section 1203.1."

19. **Currently, the California Department of Corrections and Rehabilitation (CDCR) reviews felony sentences for accuracy. Will sheriffs do this for jail-only sentences? How? Will sheriffs review to ensure that court ordered the correct facility (i.e., prison or jail)?**
Nothing in criminal justice realignment appears to change any of these activities. CDCR will continue to review prison commitment papers for felons sentenced to state prison, and the prison packet remains the same. Courts should consult with their local sheriff to ascertain whether they will handle commitments to county jail any differently than prior to criminal justice realignment.

20. **Do felony sentences served in county jail under section 1170(h) constitute "prison priors" for purposes of sentence enhancements?**
Yes. ABx1 17 amended section 667.5 to clarify that felony sentences served in county jail under section 1170(h), including the custody portion of a so-called "split sentence" imposed under section 1170(h)(5)(B), are "prison priors" for purposes of sentence enhancements.

## REVOCATION OF SUPERVISION

21. **Where will an inmate who is released from state prison to postrelease community supervision be supervised?**
An inmate released from state prison who is eligible for postrelease community supervision will be returned, like those released on parole, "to the county that was the last legal residence of the inmate prior to his or her incarceration," under subdivision (a) of section 3003, except that under subdivision (b), "an inmate may be returned to another county if that would be in the best interests of the public."

**22. When does criminal justice realignment require courts to begin hearing petitions for revocation of postrelease and parole supervision?**

*Postrelease community supervision*: Beginning *October 1, 2011*, petitions for revocation of postrelease community supervision may be filed in the superior court in the jurisdiction in which the violator is being supervised. These petitions will be filed by the local supervising agency, likely to be the probation department in most counties.

*Parole agency supervision*: Beginning *July 1, 2013*, petitions for revocation of parole supervision may be filed in the superior court in the county in which the violator is being supervised. These petitions will be filed by the state parole agency.

**23. When are courts likely to begin receiving petitions for revocation of postrelease supervision?**

With the exception of the largest counties, probably not right away. Criminal justice realignment applies to eligible inmates released from state prison on or after October 1, 2011. (Persons currently supervised by the state parole system will not be transferred to county supervision.) The legislation gives the supervising county agency (probation, in most counties) significant authority to respond to violations of supervision with a variety of intermediate sanctions, including but not limited to "flash incarceration" in a county jail for up to 10 days, without court involvement.

Before a petition for revocation of postrelease supervision may be filed with the court, section 3455(a) requires the supervising county agency to "determine, following application of its assessment processes, that intermediate sanctions are not appropriate…" Therefore, it is likely that many courts will not receive a petition for revocation for several weeks, or even months, following the October 1st effective date.

**24. Will any state parole revocation petitions be filed with the courts between October 1, 2011, and July 1, 2013?**

No. Until July 1, 2013, all state parole revocation proceedings will be carried out as they are under current law, under the jurisdiction of the Board of Parole Hearings. Petitions for parole revocation will not be eligible to be filed with a court until July 1, 2013.

**25. How many petitions for revocation of postrelease supervision is my court expected to receive?**

Because criminal justice realignment transfers an Executive Branch function to the Judicial Branch, and because it provides a great deal of implementation flexibility to counties, it is very difficult to predict petition caseload with precision. However, the state Department of Finance used CDCR's caseload experience during 2010, broken down county-by-county, to provide a rough estimate of the number of petitions for revocation of supervision each court may receive. This information is available in Appendix B.

Courts should note that, while a variety of factors and local cultures will influence each court's experience, only seven courts are estimated to have more than 300 final petitions for revocation of supervision in a 12-month period. Under these estimates, most courts will receive fewer than six petitions for revocation each week.

**26. When do courts become involved in the proceedings when a person is alleged to have violated terms or conditions of postrelease community supervision?**

The court has no jurisdiction or required role until a petition for revocation of postrelease supervision has been filed by the supervising county agency. Prior to filing a petition, the supervising county agency has an affirmative duty under criminal justice realignment to assess and determine whether an intermediate sanction not requiring court involvement is appropriate.

**27. Are the proceedings on the petitions for revocation open to the public?**

Yes. Court proceedings are presumptively open to the public unless expressly held to be confidential. The criminal justice realignment legislation is silent on this issue, and therefore these proceedings are presumed open.

**28. Will the court be required to order an inter-county transfer when a person subject to postrelease community supervision is determined to live in another county?**

No. ABx1 17 added section 3460 to establish a process for transfer by the supervising agency upon the agency's determination that the person no longer permanently resides in that agency's county. The court is not involved in this process.

**29. If the court revokes supervision and imposes the maximum term of 180 days in county jail, may the court revoke supervision and impose another jail term for a later violation?**

Most likely. Upon a finding of a violation, the court has discretion to impose one of three options: (1) Return the person to postrelease supervision with modifications of conditions, *including jail time if appropriate*; (2) Revoke supervision and order confinement in the county jail; or (3) Refer the person to a reentry court or other evidence-based program. (Pen. Code, § 3455(a)(1)–(3); emphasis added.) Any confinement ordered under subdivision (1) or (2) must not exceed 180 days. (Pen. Code, § 3455(c).) In addition, ABx1 17 clarified that:

> A person shall not remain under supervision *or in custody* pursuant to this title on or after three years from the date of the person's initial entry onto postrelease supervision, except when a bench or arrest warrant has been issued by a court or its designated hearing officer and the person has not appeared. During the time the warrant is outstanding the supervision period shall be tolled and when the person appears before the court or its designated hearing officer the supervision period may be extended for a period equivalent to the time tolled.

(Pen. Code, § 3455(d); emphasis added.) Thus, if a court imposes 180 days in the county jail but *returns the person to postrelease supervision* under paragraph (1) of subdivision (a), that person is presumably subject to additional custody time for later violations so long as supervision has not terminated.

**30. Under what authority will a supervised person be arrested or detained for a violation of terms or conditions of supervision?**

ABx1 17 revised criminal justice realignment to address arrest, warrant, and detention issues.[4]

*Before a Petition for Revocation has been filed with the court:*

o   *Arrests* – A peace officer who has probable cause to believe that a person subject to the postrelease community supervision is violating any term or condition of release is authorized to arrest the person without a warrant and bring the person before the postrelease supervising county agency (Section 3455(a)(4)).

o   *Warrants* – An officer employed by the supervising agency is authorized to seek a warrant from a court, and authorizes a court or its designated hearing officer to issue a warrant for that person's arrest, regardless of whether a petition for revocation has been filed. (Section 3455(a)(4))

*After a Petition for Revocation has been filed with the court:*

o   *Warrants* – The court or its designated hearing officer is authorized to issue a warrant for any person who is the subject of a petition for revocation of supervision who has failed to appear for a hearing on the petition, or for any reason in the interests of justice. (Section 3455(a)(5))

o   *Detention* – The court or its designated hearing officer is authorized to remand to custody a person who does appear at a hearing on a petition for revocation of supervision for any reason in the interests of justice. (Section 3455(a)(5))

o   *Detention* – A hearing on the petition for revocation shall be held within a reasonable time after the filing of the petition, and during that time, the supervising agency is authorized to determine that a person should remain in custody pending a revocation hearing, and may order the person confined, without court involvement, on a showing of a preponderance of the evidence that a person under supervision poses an unreasonable risk to public safety, or the person may not appear if released from custody, or for any reason in the interests of justice. (Section 3455(b))[5]

---

[4]There is a drafting error in the numbering of the paragraphs added to subdivision (a) of section 3455 by ABx1 17. Neither paragraph (4) nor (5) are intended to be contingent on the court finding that the person has violated the conditions of postrelease supervision.

[5] There is an apparent conflict between the court's authority granted in section 3455(a)(5) and the authority granted to the supervising agency in section 3455(b). The statute should be amended to clarify that in the event that a court's order to remand a person to custody conflicts with a supervising agency's determination that the court's order will prevail.

## EDUCATION AND RESOURCES

**31. When will training opportunities and materials be available for hearing officers and court staff?**

The AOC's CJER/Education Division is currently developing various written materials, broadcasts, webinars, and live programs regarding revocation hearing procedure, sentencing updates, and models of implementation. These are advertised in the weekly AOC Court News Update email. The soon to be launched 2011 Criminal Justice Realignment Education and Resource page on SERRANUS will provide a comprehensive list of all upcoming judicial education products and programs and a parallel resource page regarding court staff education will be available on COMET in the very near future. Please refer to those pages for more information.

**32. Where can I find educational material and other information on this topic?**

Specialized training materials are available on Serranus. In addition, the AOC has launched an online Criminal Justice Realignment Resource Center at http://www.courts.ca.gov/partners/realignment.htm. The website contains information about criminal justice realignment funding, proposed rules of court and forms, pending and enacted legislation affecting realignment, and other resources.

**33. Can the Administrative Office of the Courts provide assistance to courts who wish to recruit and hire individuals to serve as revocation hearing officers?**

Yes. The AOC Human Resources Division and Regional Office HR staff are available to help in recruitments for courts.

**34. Will the Judicial Council develop rules and forms for revocation procedures?**

Yes. Criminal justice realignment legislation requires the Judicial Council to adopt forms and rules of court to establish uniform statewide procedures to implement the new revocation proceedings, including prescribing minimum contents of supervising agency reports. Proposed rules and a form have been developed by the Criminal Law Advisory Committee and were recently circulated for public comment. They are designed to prescribe basic procedural requirements to promote statewide uniformity while providing courts with sufficient flexibility to implement the new proceedings according to local needs and customs.

**35. When will the rules and form be adopted by the Judicial Council?**

Due to the volume and complexity of the comments received, review by the council's Criminal Law Advisory Committee is ongoing. Although the committee hopes to present its recommendations to the Judicial Council at the earliest possible time, the precise date of adoption is unclear. Updates regarding the development of the rules and form will be posted to the criminal justice realignment resource center.

36. **Do the procedural requirements of the federal *Valdivia* consent decree apply to the courts' revocation procedures?**

Before the enactment of the criminal justice realignment legislation, parole revocation procedures conducted by the California Department of Corrections and Rehabilitation were subject to federal court injunction. (See *Valdivia v. Schwarzenegger* (ED Cal. Civ. S-94-0671).) That injunction was the product of a negotiated settlement of litigation between the parties to that civil lawsuit; its terms and procedures "were not necessary or required by the Constitution. There is no indication in the record that these particular procedures are necessary for the assurance of the due process rights of parolees." (*Valdivia v. Schwarzenegger* (9th Cir. 2010) 599 F.3d 984, 995.) Accordingly, case law interpreting the Constitution, and not the stipulations of the parties in *Valdivia, supra,* establishes the due process standards applicable to community supervision revocation proceedings under the Act. (See e.g. *Morrissey v. Brewer* (1972) 408 U.S. 471, 489, and *People v. Vickers* (1972) 8 Cal.3d 451, 457-458.)

## CASE MANAGEMENT

37. **Should courts create a new case file for petitions for revocation of supervision, even if the case that resulted in the underlying conviction originated in the same superior court?**

Yes. A petition for revocation of supervision will be a new case type and should be given a new file, regardless of where the commitment offense occurred. The petition is not associated with a previous case, and should be treated as a separate action. In addition, courts will be required to track this new caseload for budget purposes, so creating a new case file will facilitate this process.

38. **Will courts be required to count these matters as "new filings" for statistical purposes, particularly in light of the fact that the matters may not have originated in the same court? A new category for JBSIS?**

The Judicial Council adopted the Trial Court Budget Working Group's budget allocation recommendations on August 26, 2011. Included was a recommendation that future allocation of funding for court revocation proceedings be based on actual court-specific caseload information, rather than the estimates used for Fiscal Year 2011-2012. Therefore, the number of petitions for revocation filed will need to be tracked by the court and reported to the Administrative Office of the Courts. Additional information regarding expenditure of these funds may be requested as well.

39. **What category will the related court records fit under for record retention purposes?**

The Judicial Council's Court Executives Advisory Committee (CEAC) is currently conducting a comprehensive review of Government Code section 68152, which governs

retention of court records, and is developing recommendations for council-sponsored legislation in 2012 to update these provisions. CEAC will incorporate into this process recommendations regarding retention of records associated with petitions for revocation of supervision.

40. **Reporting to other agencies: Do courts have to report these matters to other agencies like DOJ? For L.E.A.D.S. purposes? C.L.E.T.S.?**
The Governor and the Legislature are reviewing these issues to determine whether clarifying legislation is necessary.

41. **Do the abstract of judgment forms need to be changed?**
The Criminal Law Advisory Committee will be reviewing the abstract of judgment forms to determine whether changes are necessary.

## TOPICS UNDER REVIEW

Many additional questions regarding criminal justice realignment have been raised but require further review. Please note that the Steering Committee will provide additional information as soon as possible regarding several different topics, including appeals, role of defense counsel, court records, discovery, evidence, and the applicability of previous federal litigation affecting current parole proceedings. Updates to this memorandum will be posted at http://www.courts.ca.gov/partners/realignment.htm.

In the meantime, if courts have additional questions or concerns please feel free to submit them to the Steering Committee or to crimjusticerealign@jud.ca.gov for review and possible inclusion in the next FAQ memorandum.