Filed 6/11/13  P. v. Davidson CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>    v.<br><br>CASEY DAVIDSON,<br><br>  Defendant and Appellant. | H037646<br>(Monterey County<br> Super. Ct. No. SS092733) |

Before the operative date of the Criminal Justice Realignment Act (Stats. 2011, 1st Ex.Sess. 2011-2012, ch. 12, § 1; Pen.Code, § 1170, subd. (h))[1] (hereafter the "Act" or "the Realignment Act"), defendant Casey Davidson pleaded no contest to the crime of possession of methamphetamine for sale (Health & Saf. Code, § 11378), and the trial court placed him on probation with a suspended five-year prison sentence.  After the operative date of the Realignment Act, defendant admitted a violation of probation, the trial court executed the five-year sentence, and the trial court ordered defendant to serve the sentence in prison.  Defendant appeals the order committing him to prison. Defendant contends that, because his sentence was executed after the operative date of the Realignment Act, the trial court was required to commit him to county jail for service

---

 [1] All further unspecified statutory references are to the Penal Code.

of his sentence.  For the reasons set forth below, we will reverse the order committing defendant to prison.

## PROCEDURAL BACKGROUND[2]

On May 20, 2011, defendant pleaded no contest to one count of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and admitted a prior drug-related conviction (Health & Saf. Code, 11370.2, subd. (c)), on the condition that he be placed on probation with a suspended five-year prison sentence.  On June 29, 2011, the trial court imposed a five-year prison sentence, suspended execution of the sentence, and placed defendant on probation.

The probation department filed a probation violation petition, pursuant to section 1203.2, on October 5, 2011.  The petition alleged that defendant had failed to abstain from the use of narcotics, and that defendant had failed to attend Narcotics Anonymous meetings as directed by his probation officer.  Defendant admitted the probation violation on October 14, 2011.

On November 4, 2011, the trial court revoked probation and executed the previously imposed five-year sentence.  The trial court concluded that defendant was not entitled to commitment to county jail under the Realignment Act, and it ordered defendant to serve his five-year sentence in prison.

## DISCUSSION

The Realignment Act states that the provisions of the Act "shall be applied prospectively to any person sentenced on or after October 1, 2011."  (§ 1170, subd. (h)(6).)  Defendant contends that this language in the Act required the trial court to commit him to county jail for service of his five-year sentence, and that the order committing him to prison must therefore be reversed.  Defendant's position is that he was

---

[2] The facts of the underlying case are not relevant to the issue presented on appeal.

sentenced within the meaning of the Act on November 4, 2011, the date that the trial court executed the previously imposed five-year sentence. The People contend that the trial court properly ordered defendant to serve his sentence in prison. The People's position is that defendant was sentenced for purposes of the Act on June 29, 2011, the date that the trial court imposed and suspended execution of the five-year sentence.

At issue in this appeal is the meaning of the word "sentenced" as used in the Realignment Act. In *People v. Scott* (May 23, 2013, H037923) ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407] (*Scott*), we recently held that offenders in defendant's position—"those defendants whose sentence was imposed but suspended before the effective date of the Act, but whose sentence was thereafter executed *after* the effective date of the Act"— are sentenced for purposes of the Act on the date that the sentence is executed. (*Scott, supra,* ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407, at p. *5], italics in original) We therefore conclude that defendant was sentenced within the meaning of the Act on November 4, 2011. Accordingly, because this sentencing occurred after October 1, 2011, we find that the trial court erred in failing to commit defendant to county jail for service of his five-year sentence.

### Standard of Review and the Rules of Statutory Interpretation

Defendant's appeal presents an issue of statutory interpretation. "Issues of statutory interpretation are questions of law subject to de novo review." (*People v. Simmons* (2012) 210 Cal.App.4th 778, 790.)

We have written that when faced with a question of statutory meaning, "we first examine the words of the statute in context, giving them if possible their plain, everyday, commonsense meaning. If we find no ambiguity or uncertainty, we presume that the Legislature meant what it said, rendering further inquiry into legislative intent unnecessary. [Citation.] If, on the other hand, the statutory language is unclear or ambiguous, i.e., it permits more than one reasonable interpretation, we may consider

3

various extrinsic aids to help us ascertain the Legislature's intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. [Citations.] In such circumstances, we select the interpretation that comports most closely with the apparent intent of the Legislature, with a view toward promoting, rather than defeating, the general purpose of the statute and avoiding an interpretation that would lead to absurd consequences. [Citation.]" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 749.)

### *The Realignment Act*

The Realignment Act states that defendants who would have served their felony sentences in prison prior to the enactment of the Act "shall" now serve their sentences in county jail. (§ 1170, subd. (h)(1)-(2).) One of the provisions of the Act, section 1170, subdivision (h)(6), states that the Act "shall be applied prospectively to any person *sentenced* on or after October 1, 2011." (§ 1170, subd. (h)(6), italics added.)

The Realignment Act prohibits certain defendants from serving their sentences in county jail. (§ 1170, subd. (h)(1)-(3).) Specifically, the Act requires the following defendants to serve their sentences in prison: those who have prior or current convictions for serious felonies, those who have prior or current convictions for violent felonies, those who are required to register as sex offenders, and those who are subject to aggravated white collar crime enhancements under section 186.11. (§ 1170, subd. (h)(3).)

If a defendant meets the Realignment Act's criteria for county jail commitment, the trial court must order the defendant to serve his or her sentence in county jail. (See § 1170, subd. (h)(1)-(2) [specifying that eligible defendants "shall" be punished by imprisonment in a county jail].) A trial court has "no discretion to send to prison a

4

defendant who qualifies under the Act to serve the sentence in county jail." (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1004.)

The legislative intent underlying the Realignment Act is codified in section 17.5. (Stats. 2011, ch. 39, § 5.) Section 17.5 states that the Legislature is committed "to reducing recidivism among criminal offenders." (§ 17.5, subd. (a)(1).) Section 17.5 expresses the Legislature's concern that, "[d]espite the dramatic increase in corrections spending over the past two decades," individuals who have served time in prison have a high recidivism rate. (§ 17.5, subd. (a)(2).) Because "policies that rely on building and operating more prisons . . . will not result in improved public safety," the Legislature declares in section 17.5 that "California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety." (§ 17.5, subd. (a)(3)-(4).) In section 17.5, the Legislature further declares: "Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society." (§ 17.5, subd. (a)(5).)

***The Trial Court Erred in Failing to Commit Defendant to County Jail***

In the instant case, it is undisputed that defendant belongs to the class of low-level offenders that the Realignment Act deems suitable for commitment to county jail. Defendant's conviction for possession of methamphetamine for sale is a conviction that must be punished pursuant to the Act's county jail prescription. (Health & Saf. Code, § 11378 [individuals convicted of possession of methamphetamine for sale "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code"].) Moreover, defendant does not fall within the category of offenders that the Act

5

declares unsuitable for county jail: defendant has never been convicted of a violent or serious felony, he is not required to register as a sex offender, and he is not subject to an aggravated white collar crime enhancement. Thus, the only issue before us is whether defendant was "sentenced" before or after the operative date of the Act.

In *Scott*, we addressed the "question of whether or not the changes made to the Penal Code by the Legislature in the Realignment Act apply to those defendants whose sentence was imposed but suspended before the effective date of the Act, but whose sentence was thereafter executed *after* the effective date of the Act." (*Scott, supra,* ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407, at p. *5], italics in original.) We noted that "[s]ection 1170, subdivision (h)(6), on its face seems unambiguous, but an application of the section to the factual situation presented here requires an interpretation of what the Legislature meant by those 'sentenced' on or after the effective date of the statute." (*Scott, supra,* ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407, at p. *10].)

After examining the legislative history of the Realignment Act, *Scott* held: "We find that since the legislative intent of the Realignment Act was to direct certain low-level offenders from state prison to county jail and other community-based programs prospectively after October 1, 2011 (§ 1170, subd. (h)(6)), the Act is properly interpreted as to realign offenders in defendant's situation. Namely, we find the provisions of the amended statute should apply to those qualifying defendants who committed a crime now subject to a sentence in county jail *prior* to the passage of the Realignment Act, were placed on probation after execution of sentence was suspended, violated probation, and whose sentence was thereafter executed *after* October 1, 2011. This interpretation satisfies the stated purposes of realignment: reducing recidivism by redirecting low-level felons, such as defendant here, to county and other locally-based programs over state programs." (*Scott, supra,* ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407, at p. *15], italics in original.)

6

Defendant's case presents the same question that we considered in *Scott*. Like *Scott,* defendant had a sentence imposed and suspended before the operative date of the Realignment Act, and the previously imposed sentence was executed after the operative date of the Act. *Scott* made clear that offenders in defendant's position are sentenced within the meaning of the Realignment Act on the date that the trial court orders execution of the sentence. Thus, under the principles articulated in *Scott*, defendant was sentenced for purposes of the Realignment Act on November 4, 2011, the date that the trial court executed the previously imposed five-year sentence. Accordingly, because defendant was sentenced within the meaning of the Act after October 1, 2011, the trial court was required to commit defendant to county jail for service of his five-year sentence. (See § 1170, subd. (h)(1)-(2) [defendants who meet the Act's criteria for county jail commitment "shall" be punished by imprisonment in county jail]; *People v. Clytus, supra,* 209 Cal.App.4th at p. 1004 [if a defendant meets the Act's criteria for commitment to county jail, the trial court has "no discretion" to send the defendant to prison].)

The People argue the California Supreme Court's holding in *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*) required the trial court to commit defendant to prison. In *Howard*, the defendant pleaded guilty to transportation of cocaine base, and the trial court placed her on probation with a suspended four-year prison sentence. (*Id.* at p. 1084.) When the trial court later determined that the defendant had violated the terms of her probation, it executed the previously imposed four-year prison sentence. (*Id.* at p. 1086.) On appeal, the defendant argued that she was "entitled to a remand for resentencing because the trial court improperly failed to exercise its discretion to impose a mitigated sentence of three years, based on evidence that she had reliably reported to her probation officer, had tested negative for drug use, had maintained steady employment, and had complied with her other probation conditions." (*Id.* at p. 1085.) *Howard* held: "[I]f the court has actually imposed sentence, and the defendant has begun

7

a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage." (*Id.* at p. 1095.) *Howard* reasoned that "[o]n revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact sentence into effect." (*Id.* at p. 1088.)

The People assert that the exact sentence imposed in defendant's case was five years in state prison, not five years in county jail. The People therefore contend that *Howard* required the trial court to commit defendant to prison when it revoked probation and executed the five-year sentence. Contrary to the People's assertion, *Howard* did not require the trial court to commit defendant to prison. *Howard* considered whether a trial court had discretion to reduce a previously imposed sentence upon the defendant's presentation of mitigating evidence. *Howard* did not consider the issue presented in the instant appeal—whether a trial court must order a defendant to serve a previously imposed prison sentence in county jail in light of the newly-enacted Realignment Act. Thus, because "cases are not authority for propositions not considered," we find that *Howard* does not control in defendant's case. (*People v. Brown* (2012) 54 Cal.4th 314, 330.) Indeed, in *Scott* we concluded that the *Howard* holding is inapplicable when a trial court orders a previously imposed prison sentence to be served in county jail due to the sentencing changes effected by the Realignment Act. (*Scott, supra,* ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 407, at p. *18].) *Scott* noted that, in such a situation, "the trial court is not modifying a prior suspended sentence by reducing or otherwise ameliorating the term of commitment. Instead, it is following the letter of the new law." (*Ibid.*) The People's reliance on *Howard* therefore is unavailing.

For the foregoing reasons, we conclude that the Realignment Act required the trial court to commit defendant to county jail for service of his five-year sentence. We accordingly reverse the trial court order committing defendant to prison.

**DISPOSITION**

We reverse the order committing defendant to prison. We remand to the trial court with the directive to commit defendant to county jail for service of his five-year sentence.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA J.

9