[No. B241551. Second Dist., Div. Two. Feb. 28, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DAVIS GIPSON, JR., Defendant and Appellant.

COUNSEL

Jonathan B. Steiner and Richard B. Lennon, under appointments by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ASHMANN-GERST, J.**—James Davis Gipson, Jr. (Gipson), appeals from the order revoking his probation, vacating the suspension of a previously

imposed sentence and committing him to prison for five years. He contends that there was insufficient evidence of a probation violation. In addition, he argues that his commitment to state prison violates the Criminal Justice Realignment Act of 2011 (Realignment Act) because his sentence was executed after the threshold date of October 1, 2011. Neither contention has merit.

■ With respect to the Realignment Act, we note that in *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1004 [147 Cal.Rptr.3d 448] (*Clytus*), Division Eight of our district held that a defendant is sentenced for purposes of the Realignment Act on the date a trial court orders a previously imposed but suspended sentence to be executed. We disagree with *Clytus* and hold that a defendant is sentenced on the date that sentence is first announced and imposed even if execution of the sentence does not happen until a later date.

We affirm.

## FACTS

Gipson is a member of a gang called the Grape Street Crips.

He pleaded guilty to possessing a firearm while a felon, in violation of Penal Code former section 12021, subdivision (a)(1),[1] and to possessing an assault rifle in violation of former section 12280, subdivision (b).[2] In addition, he admitted that he committed the crimes for the benefit of a gang within the meaning of section 186.22, subdivision (b)(1)(A). On October 12, 2010, he was sentenced to five years in state prison.[3] The sentence was suspended and he was placed on probation for three years. As a condition of his probation, Gipson was told not to associate with known gang members.

On May 29, 2012, Officer Daniel Pearce of the Los Angeles Police Department was called to testify at a probation revocation hearing. He relayed the following facts. He is assigned to Jordan Downs and is familiar with the Grape Street Crips. After working with this gang, he knows a

---

[1] Former section 12021, subdivision (a)(1) was repealed operative January 1, 2012, but its provisions were reenacted without substantive change as section 29800, subdivision (a)(1).

All further statutory references are to the Penal Code unless otherwise indicated.

[2] Effective January 1, 2012, former section 12280, subdivision (b), was repealed and replaced by section 30605 without substantive change.

[3] The trial court stated on the record that it was suspending imposition of sentence. Then it stated, "You're ordered to serve five years in state prison, that is suspended." The minute order stated "imposition of sentence suspended" and "005 years of jail suspended." The parties do not dispute that what the trial court actually did was impose sentence and stay the execution of it.

majority of its 2,000 members. The members all grew up together and know each other. For personal safety, they have to know each other in order to identify friends from enemies. The members of the gang mainly hang out inside Jordan Downs. Officer Pearce has had a lot of contact with Gipson. On January 17, 2012, while assigned to a beat in Jordan Downs, Officer Pearce saw Gipson in a parking lot. For about five to 10 seconds, Gipson was standing in the company of three Grape Street Crips: Rodney Johnson (Johnson), Ronald Brim (Brim) and Johnny Bailey (Bailey). Based on how they were positioned, it appeared to Officer Pearce that Gipson was talking to Johnson. Officer Pearce is on a first name basis with Johnson and has had contact with Johnson about five times a year. In the past, Johnson admitted to being a gang member. Every parking lot in Jordan Downs is a known hangout for the Grape Street Crips.

The trial court found that Gipson violated his probation by associating with known gang members. Probation was revoked and Gipson was sentenced to five years in state prison.

This appeal followed.

## DISCUSSION

I. *The Revocation of Probation.*

According to Gipson, his probation was improperly revoked because there was no evidence that he knew that Johnson was a gang member. As we discuss below, this argument lacks merit.

Probation can be revoked "if the interests of justice so require and the [trial] court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation." (Former § 1203.2, subd. (a).) Based on the testimony of Officer Pearce, the trial court had sufficient reason to believe that Gipson knowingly associated with a gang member.

There is an inference that Gipson knew Johnson was a gang member—and Brim and Bailey, too—because Grape Street Crips all grew up together and know each other. For personal safety, they have to know each other so that they can differentiate friends from enemies. In addition, Gipson spoke to Johnson in a parking lot in Jordan Downs. Grape Street Crips are known to hang out inside Jordan Downs parking lots. Taken together, the facts show that a gang member on probation was speaking to another gang member in a gang hangout within that particular gang's territory. As a matter of logic, Gipson's knowledge that he was violating probation is powerfully implied.

According to Gipson, this evidence was insufficient because it established nothing more than a general pattern that Grape Street Crips know each other. Though he does not say it expressly, he suggests that the inference of knowledge is too speculative to withstand scrutiny under the substantial evidence test. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 [51 Cal.Rptr.2d 907] ["Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence."].) We disagree. Each fact attested to by Officer Pearce, taken alone, would be insufficient to support an inference of knowledge. But, cumulatively, the inference of Gipson's knowledge is sufficiently solid.[4]

## II. *The Commitment to State Prison.*

 The Realignment Act replaced "prison commitments with county jail commitments for certain felonies and eligible defendants." (*Clytus, supra,* 209 Cal.App.4th at p. 1004.) It realigns " 'low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs.' " (*Id.* at p. 1005.) Pursuant to section 1170, subdivision (h)(6), the "sentencing changes made by the [Realignment Act] . . . shall be applied prospectively to any person sentenced on or after October 1, 2011."

It is undisputed that Gipson does not have a prior conviction for a serious, violent or sex offense. Although he was sentenced on October 12, 2010, the sentence was suspended and not executed until May 29, 2012. The question presented is whether, for purposes of the Realignment Act, he was sentenced on the former date or the latter date.

If we followed *Clytus*, Gipson would have to serve his term in county jail. In that case, the defendant was sentenced in 2010 but the trial court suspended the sentence and granted probation. At a probation violation hearing held on October 14, 2011, the defendant admitted to violating probation. The trial court executed the suspended sentence and ordered the defendant to serve his term in state prison. (*Clytus, supra,* 209 Cal.App.4th at p. 1004.) The defendant appealed his state prison commitment. *Clytus* concluded "that a trial court executing a suspended sentence as punishment

---

[4] In the People's view, Gipson violated his probation even if he did not know that Johnson was a member of the Grape Street Crips. Because there was substantial evidence that Gipson had knowledge, we need not reach this issue. We note that nonassociation conditions without a knowledge element have been stricken as constitutionally overbroad. (*People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [23 Cal.Rptr.2d 340] [imposing a knowledge element on an overbroad condition requiring the defendant to refrain from associating with users and sellers of narcotics, felons and ex-felons].)

for a probation violation on and after October 1, 2011, has no discretion to send to prison a defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h)." (*Clytus, supra,* at p. 1006.) The court reasoned that the plain meaning of section 1170, subdivision (h)(6) "is that any sentence executed on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail." (*Clytus, supra,* at p. 1006.)

■ *Clytus*, of course, was decided by a different division within the Second District of the Court of Appeal and we are not bound by it. (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529 [92 Cal.Rptr.3d 399].) It is true that we typically follow the decisions of other appellate districts or divisions, but only if we lack good reason to disagree. (*Ibid.*) As discussed below, we find good reason to disagree with *Clytus*.

■ When interpreting a statute, our goal is to discern the Legislature's intent. " 'If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.' [Citation.]" (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288 [93 Cal.Rptr.3d 369, 206 P.3d 739].) Keeping these principles firmly in mind, we turn to the language of section 1170, subdivision (h)(6). Without any qualification, it applies the Realignment Act to "any person sentenced on or after October 1, 2011." In our view, the word "sentenced" plainly means the time when the trial court first announced and imposed sentence as opposed to the time when the sentence was executed.

■ There is an "important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences." (*People v. Howard* (1997) 16 Cal.4th 1081, 1087 [68 Cal.Rptr.2d 870, 946 P.2d 828] (*Howard*).) "When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation. [Citations.]" (*Ibid.*) "[W]here a sentence has actually been imposed but its execution suspended, 'The revocation of the suspension of execution of the judgment brings the former judgment into full force and effect . . . .' [Citations.]" (*Ibid.*) If a trial court "previously had imposed sentence, [it] must order that exact sentence into effect [citations]." (*Id.* at p. 1088.) Thus, under *Howard*, imposition of sentence is equated with entry of a final judgment. When a final judgment is entered, everything about a defendant's sentence is prescribed. It would be illogical to say he has not been sentenced. If we were to conclude that the word "sentenced" means that sentence was both imposed and executed, we would force extra meaning on the language it

is not susceptible to. We decline. ■ A court cannot "rewrite a statute to conform to a meaning that varies from that which is expressed. [Citations.]" (*People v. Green* (2011) 197 Cal.App.4th 1485, 1502, fn. 15 [130 Cal.Rptr.3d 290].)

■ Our conclusion is bolstered by *People v. Chagolla* (1984) 151 Cal.App.3d 1045 [199 Cal.Rptr. 181] (*Chagolla*). The *Chagolla* court noted that "where sentence is imposed and execution thereof suspended, an appeal may be taken from the sentence to state prison as the final judgment or an order granting probation as an order made after judgment. [Citations.]" (*Id.* at p. 1049.) The trial court is "without jurisdiction to modify or change the final judgment and is required to order into execution that judgment after revocation of probation. The attempted modification of [a] previously imposed sentence [is] beyond the trial court's jurisdiction and subject to review . . ." on appeal. (*Ibid.*) Here, we fail to see how the trial court had jurisdiction to do anything other than order the execution of the previously imposed prison sentence.

■ Because Gipson was sentenced on or before October 1, 2011, his sentence to state prison does not violate the Realignment Act.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Chavez, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2013, S209692. Kennard, J., was of the opinion that the petition should be granted.