Filed 10/4/13 reposted same date to correct concurring justice
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LARRY THOMAS REECE,<br><br>    Defendant and Respondent. | H038356<br>(Monterey County<br>Super. Ct. Nos. SS101428A ,<br>SS110117A) |

Defendant Larry Thomas Reece was sentenced in two cases to a total of five years, eight months prison for petty theft with priors (Pen. Code, §§ 666, 484, subd. (a), 667.5, subd. (b))[1] and cocaine possession (Health & Saf. Code, § 11350, subd. (a)). The sentences were imposed before October 1, 2011, the effective date of the Criminal Justice Realignment Act of 2011,[2] but not executed until after that date. In this appeal, we must determine whether the sentences are to be served in county jail, as the superior court concluded, or in state prison, as the People contend. For the reasons stated here, we will affirm the superior court's judgment that section 1170, subdivision (h), applies to defendants whose sentences were imposed before but executed after the Realignment Act's operative date.

## I.      BACKGROUND

In April 2011, the superior court sentenced defendant to a total of five years, eight months prison as follows: In case No. SS101428A, the upper term of three years for

---

[1] Unspecified statutory references are to the Penal Code.

[2] Stats. 2011, 1st Exec. Sess. 2011–2012, chs. 12,15.

petty theft with prior theft convictions (§§ 666, 484, subd. (a)), plus one year for each of two prior prison terms (§ 667.5, subd. (b)); and in case No. SS110117A, eight months consecutive for possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). In exchange for defendant's guilty pleas and admissions of the prior prison terms, a "crime on bail" enhancement under section 12022.1 and a misdemeanor paraphernalia charge under Business and Professions Code section 4140 were dismissed in case No. SS110117A pursuant to section 1385. In each case, by agreement, the court suspended execution of the sentence, placed defendant on probation, and referred him to participate in drug treatment court.

In January 2012, the People filed a petition to revoke probation, alleging that defendant had been discharged from a court-ordered drug treatment program for possessing a cellular phone. Defendant admitted the violation in February 2012 and the trial court determined that the suspended sentences would be executed. After hearing arguments regarding the incarceration location, the superior court concluded section 1170, subdivision (h), required defendant to serve his sentence in county jail rather than state prison.

## II. DISCUSSION

### A. THE CRIMINAL JUSTICE REALIGNMENT ACT

In 2011, the Legislature passed a series of laws that marked a "sea change in felony sentencing" in California. (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1007 (*Clytus*).) Breaking with the historical practice of incarcerating all felons in state prison, the Legislature amended the Penal Code to make county jails the default location for nonserious, nonviolent, and nonsexual felonies. (§ 1170, subd. (h)(2) ["Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail. . . ."].) Sentences for those felonies are now served in county jail unless the defendant: (1) has a current or prior conviction for a

serious or violent felony (§§ 1192.7, subd. (c), 667.5, subd. (c)); (2) has a prior conviction in another jurisdiction that meets all the elements of a serious or violent felony (§§ 1192.7, subd. (c), 667.5, subd. (c)); (3) is required to register as a sex offender (§ 290 et seq.); or (4) is subject to an enhancement for multiple felonies involving fraud or embezzlement (§ 186.11). (§ 1170, subd. (h)(3).) The Realignment Act specifically states the new sentencing regime applies to "any person sentenced on or after October 1, 2011." (*Id.*, subd. (h)(6).)

The Legislature's rationale for felony sentencing realignment is codified at section 17.5. That section characterizes as unsustainable the historical criminal justice policy of "building and operating more prisons to address community safety concerns," while noting the high recidivism rates for those who have served time in prison, both in California and throughout the nation. (§ 17.5, subds. (a)(2), (a)(3).) To "improve public safety outcomes," the Legislature calls for reinvesting "criminal justice resources to support community-based corrections programs" and "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses" to "community-based punishment," including county jails. (§ 17.5, subds. (a)(4), (a)(5), (a)(8).)

## B.     APPLICABILITY TO DEFENDANT'S SENTENCE

The superior court decided section 1170, subdivision (h)(6), mandates incarceration in county jail for defendant's offenses because his sentences were *executed* after October 1, 2011. The People argue that realignment is inapplicable to defendant because the sentences were *imposed* before October 1, 2011. A trial court's interpretation of a statutory provision is a question of law we review de novo. (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 650.)

3

### 1. Appellate Courts Are Divided in Applying the Realignment Act

Several published opinions have reached conflicting results in applying the Realignment Act to previously-suspended sentences.

#### a. Cases Sending Defendants to County Jail

In the first published case to address this issue, *Clytus*, *supra*, 209 Cal.App.4th 1001, Division Eight of the Second Appellate District looked to the text of section 1170, subdivision (h)(6), and concluded that the Legislature's use of " 'any person sentenced' " was meant to include individuals whose sentences were imposed before but executed after October 1, 2011. (*Clytus*, *supra*, at p. 1006.) The court reasoned that, for purposes of section 1170, subdivision (h)(6), a defendant was a " 'person sentenced' " both before October 1, 2011 (at the imposition of sentence) and after October 1, 2011 (at the execution of sentence). (*Clytus*, *supra*, at p. 1007.) The court explained that execution of a sentence also constitutes "sentencing" because the decision to revoke probation is discretionary and the court must articulate its reasons for revoking probation and executing the sentence. (*Ibid*.)

The *Clytus* court distinguished the California Supreme Court's opinion in *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*), which held that when a court imposes a sentence but suspends its execution, the court cannot later modify the previously-imposed sentence and "must order that exact sentence into effect . . . ." (*Id.* at p. 1088.) While the *Clytus* court recognized *Howard* was "clear and well established," it nonetheless concluded the case was inapplicable because *Howard* concerned only the length of an individual's sentence rather than the location of incarceration. (*Clytus*, *supra*, 209 Cal.App.4th at p. 1008.)

One panel of the Sixth District recently approved of the reasoning in *Clytus* and reached the same result in *People v. Scott* (2013) 216 Cal.App.4th 848, review granted July 24, 2013, No. S211670, 303 P.3rd 391.

4

## b. Cases Sending Defendants to State Prison

In contrast to *Clytus* and *Scott*, five published opinions have held that individuals in defendant's position must serve their sentences in state prison. The first came from Division Two of the Second Appellate District in *People v. Gipson* (2013) 213 Cal.App.4th 1523 (*Gipson*). In *Gipson*, the court analyzed the language of section 1170, subdivision (h)(6), and concluded the word " 'sentenced' plainly means" the date sentence is imposed rather than the date it is executed. (*Gipson*, *supra*, at p. 1529.) In support, the court quoted from *Howard* regarding the " 'important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences.' " (*Ibid*., quoting *Howard*, *supra*, 16 Cal.4th at p. 1087.) While trial courts retain significant discretion if imposition of sentence is suspended, the court continued, when the defendant has already been sentenced trial courts have no discretion to modify sentences because "everything about a defendant's sentence is prescribed," including the duration and location of the sentence. (*Gipson*, *supra*, at p. 1529.) For this reason, the court declined to follow *Clytus* and affirmed the defendant's sentence to state prison. (*Id*. at pp. 1529-1530.)

The second published opinion in favor of state prison, *People v. Mora* (2013) 214 Cal.App.4th 1477 (*Mora*), came from Division One of the Fourth Appellate District. The *Mora* court followed *Gipson*, also reasoning that section 1170, subdivision (h)(6) refers to the date sentence is imposed rather than the date it is executed. (*Mora*, *supra*, at p. 1482.) The court explained that "imposition of the sentence is equated with a final judgment," which takes away the jurisdiction of the trial court to "modify or change the final judgment" when a defendant violates his or her probation terms. (*Ibid*.)

Division Two of the Fourth Appellate District also found in favor of state prison in *People v. Kelly* (2013) 215 Cal.App.4th 297 (*Kelly*). The *Kelly* court found the reasoning

in *Clytus* in conflict with *Howard*'s interpretation of section 1203.2, subdivision (c),[3] as well as California Rules of Court, rule 4.435(b)(2).[4] (*Kelly*, *supra*, at pp. 302-303.) The court noted that *Howard* interpreted those provisions as limiting the trial court's power to modify a sentence once it is imposed. (*Id.*, at p. 302.) A trial court retaining jurisdiction to change the location of a previously-imposed sentence would, according to *Kelly*, violate the limitation on the trial court's jurisdiction recognized both in statute and by the Supreme Court in *Howard*. (*Id.* at p. 305.) Relying on *Howard*, the court concluded that "when a court imposes sentence but suspends its *execution* during a period of probation, there is a judgment, and revocation of the order granting probation requires execution of the existing sentence, exactly as imposed." (*Id.* at p. 302, citing *Howard*, *supra*, 16 Cal.4th at pp. 1087-1088.)

The Third District has also determined that individuals in defendant's position should be sent to state prison. (*People v. Wilcox* (2013) 217 Cal.App.4th 618.) *Wilcox* distinguishes *Clytus*, and follows *Gipson*, *Mora*, and *Kelly*. (*Id.*, at pp. 622-626.)

The most recent opinion sending a defendant to state prison, from a different panel of the Sixth District, is *People v. Moreno* (2013) 218 Cal.App.4th 846 (*Moreno*). The *Moreno* court analyzed the various opinions interpreting section 1170, subdivision (h)(6),

---

[3] Section 1203.2, subdivision (c), states: "Upon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect. In either case, the person shall be delivered over to the proper officer to serve his or her sentence, less any credits herein provided for."

[4] California Rules of Court, rule 4.435(b)(2), states: "If the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment."

and followed *Kelly*, concluding that because the defendant's sentence was *imposed* before October 1, 2011, the Realignment Act did not apply, regardless of when the sentence was executed. (*Moreno*, *supra*, at p. 851.) In so holding, the panel reasoned that "[w]hen the trial court revoked [the] defendant's probation and executed his sentence on November 3, 2011, it lacked jurisdiction to modify the sentence committing him to state prison for five years." (*Ibid*.)

### 2. Analysis

To determine the meaning of section 1170, subdivision (h)(6), we begin with the statutory language and give "the words their usual, ordinary meaning." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 (*Canty*).) If it is unambiguous, we follow its plain meaning. (*Ibid*.) If it is ambiguous, we may determine " 'whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " (*Ibid*., quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) We must construe statutory language "in the context of the statute as a whole and the overall statutory scheme . . . ." (*Canty*, *supra*, at p. 1276.) We may reject a statutory interpretation that would lead to absurd results or consequences. (*People v. Leiva* (2013) 56 Cal.4th 498, 506.)

### a. Statutory Interpretation Supports County Jail Incarceration

Section 1170, subdivision (h)(6), states the Realignment Act is applicable "prospectively to any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).) In the probation revocation context, we find the term "sentenced" ambiguous because it could refer to either the imposition of a sentence or the execution of a previously-imposed sentence. Because of this ambiguity, we must look to the purposes of the Realignment Act to determine its meaning.

When the Legislature passed Assembly Bill No. 109 in 2011, it added and amended an array of criminal justice statutes so that low-level felons would be confined

7

in county jails instead of state prisons. In addition to adding the phrase "any person sentenced" to section 1170,[5] the bill also added section 17.5, setting forth findings and declarations about the realignment scheme. (Stats. 2011, ch. 15, §§ 229, 450.) Section 17.5, subdivision (a)(2), notes that recidivism rates for people released from prison have either remained the same or increased despite large increases in corrections spending. Based on those rates, the Legislature concluded that criminal justice policies relying solely on building and operating new prisons are unsustainable and do not improve public safety. (§ 17.5, subd. (a)(3).) To reduce recidivism and increase public safety outcomes, the Legislature decided to "reinvest its criminal justice resources to support community-based corrections programs . . . ." (*Id.*, subd. (a)(4).) While not all offenders were selected for realignment, the Legislature determined it would be beneficial to "[r]ealign[] low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs . . . ." (*Id.*, subd. (a)(5).)

When interpreted in the context of the Act as a whole, we conclude the Legislature intended to realign the incarceration of low-level offenders whose sentences would be imposed on or after October 1, 2011 as well as those whose suspended sentences would be executed after that date. One stated objective of the Realignment Act is to make local jails the commitment location for all felons convicted of nonserious, nonviolent, and nonsexual crimes. (§ 17.5, subd. (a)(5).) Because defendant is a low-level offender meeting the statutory prerequisites, interpreting section 1170, subdivision (h)(6), to include him and similarly situated offenders comports with the stated purposes and intent of the Realignment Act. (Accord *Clytus*, *supra*, 209 Cal.App.4th at pp. 1004-1007.)

---

[5] When the Legislature passed Assembly Bill No. 109, it codified this language in section 1170, subdivision (h)(5), and the effective date was July 1, 2011. (Stats. 2011, ch. 15, § 450.) Section 1170 was then amended several times before reaching its present form, with the language at issue moving to subdivision (h)(6) and the effective date changed to October 1, 2011. (§ 1170, subd. (h)(6).)

8

Additional support for our interpretation of section 1170, subdivision (h)(6), is derived from changes made to the treatment of low-level inmates released from prison. Assembly Bill No. 109 added a new title to the Penal Code, governing supervision of nonviolent, nonserious, nonsexual felony offenders released from prison on or after October 1, 2011. (Stats. 2011, ch. 15, §§ 479; Pen. Code, § 3450 et seq.) For these offenders, section 3451 now mandates up to three years of postrelease community supervision by county agencies instead of parole. (§ 3451, subd. (a).) If the terms of community supervision are violated and the revocation hearing officer decides incarceration is the proper punishment, the offender serves any further term of confinement in county jail. (§ 3455, subd. (a).) Section 3458 makes clear that "[n]o person subject to this title shall be returned to prison for a violation of any condition of the person's postrelease supervision agreement." (§ 3458.)

### b. *Howard* is Inapposite

The People argue *Howard* requires defendant to serve his sentence in state prison. We disagree. At issue in *Howard* was the discretion of trial courts to modify the length of a previously-imposed but suspended sentence. (*Howard*, *supra*, 16 Cal.4th at p. 1086.) The court explained that, while a trial court has broad discretion during a probation revocation hearing when imposition of sentence has been suspended, if the court previously imposed a sentence and suspended only its *execution*, the discretion of the court is more limited. (*Id*. at p. 1088.) If a sentence was previously imposed, the trial court is left with two options at the revocation hearing: either (a) allow the defendant to remain on probation; or (b) revoke probation and "order that exact [previously-imposed] sentence into effect . . . ." (*Ibid*. [interpreting § 1203.2, subd. (c)].)

Though other courts have interpreted this language to require individuals like defendant to serve their previously-imposed sentences in state prison, we agree with *Clytus* that *Howard* only proscribes reducing a previously-imposed sentence. (*Clytus*,

9

*supra*, 209 Cal.App.4th at pp. 1007-1009.) The People cite two cases applying *Howard* to circumstances other than the length of a sentence.[6] Those cases, which were both decided long before the Realignment Act, involved trial courts attempting to ameliorate sentences, which *Howard* forbids. (*Howard*, *supra*, 16 Cal.4th at p. 1088.) *Howard* is silent, however, on the applicability of section 1203.2, subdivision (c), to the location of incarceration. Additionally, because the Supreme Court decided *Howard* in 1997, it could not have contemplated that nearly 15 years later the Legislature would drastically alter California's sentencing scheme. We therefore find *Howard* inapplicable to the location of defendant's incarceration. (*People v. Brown* (2012) 54 Cal.4th 314, 330 ["cases are not authority for propositions not considered"].)

We likewise reject the People's argument that applying the Realignment Act would reduce the severity of defendant's sentence. The People claim that defendants sentenced pursuant to section 1170 might receive a reduced sentence because section 1170, subdivision (h)(5)(B), gives trial courts discretion to split sentences between confinement in county jail and supervised release. We are not called upon to decide that issue here because the trial court ordered defendant to serve the entire five year, eight month sentence in county jail. The People also note that defendants sentenced pursuant to realignment are not subject to parole or postrelease community supervision at the end of their incarceration. However, that does not directly affect the severity of defendant's sentence since he will be incarcerated for the same duration he would have been had he served his sentence in state prison.

We also note that the Realignment Act has changed other sections of the Penal Code which make incarceration in county jail equivalent to incarceration in state prison.

---

[6] The People cite *People v. Garcia* (2006) 147 Cal.App.4th 913, 916-917 (rejecting trial court attempt to strike § 290 sex offender registration requirement), and *People v. Wood* (1998) 62 Cal.App.4th 1262, 1270-1271 (rejecting trial court attempt to reduce felony "wobbler" conviction to a misdemeanor).

10

For example, section 667.5, subdivision (b), which adds a consecutive one-year enhancement for each prior prison term served, now includes sentences served in county jail and even split sentences imposed under section 1170, subdivision (h)(5). (§ 667.5, subd. (b).) Defendants committed to county jail pursuant to section 1170, subdivision (h), earn conduct credits at the same rate as defendants committed to prison. (Compare § 4019, subd. (f) ["a term of four days will be deemed to have been served for every two days spent in actual custody" in county jail] with § 2933, subd. (b) ["For every six months of continuous incarceration [in state prison], a prisoner shall be awarded credit reductions from his or her term of confinement of six months."].)

### c. Defendant's Sentences Do Not Run Afoul of the Saving Clause

The People argue that application of the Realignment Act to defendant effectively applies that law retroactively, in violation of the saving clause in section 1170, subdivision (h)(6). Laws that mitigate punishment are to be applied retroactively unless there is evidence of a contrary intent. (*In re Estrada* (1965) 63 Cal.2d 740, 742.) Contrary intent can come in the form of a saving clause, which expressly states that a law is of only prospective application. (*People v Nasalga* (1996) 12 Cal.4th 784, 793.) We agree that section 1170, subdivision (h)(6), is a saving clause foreclosing retroactive application. However, defendant's sentences were not executed until after the October 1, 2011 effective date of the Realignment Act, which, under our interpretation, brings these sentences within the intended scope of the legislation.

### C. EFFECT OF REALIGNMENT ON THE PLEA AGREEMENT

The People urge us to remand this matter so that the prosecution may withdraw from the plea agreement unless the trial court's decision is reversed. Relying on *People v. Collins* (1978) 21 Cal.3d 208, the People argue that defendant's county jail sentence deprives them of the benefit of their bargain because "the possibility of a state prison sentence was an integral part of the plea agreement . . . ." In *Collins*, the Supreme Court

11

overturned defendant's plea agreement because the offense he pleaded to was no longer a crime when the trial court imposed sentence. (*Id*. at pp. 211, 213.) Rejecting the defendant's argument that he should be set free, the Supreme Court remanded the matter to allow the People to revive the counts that were dismissed as part of the plea agreement. (*Id*. at p. 215.) The court noted that integral to the People's interest in entering plea agreements "is the defendant's vulnerability to a term of punishment." (*Ibid*.) It then held that "[w]hen a defendant gains *total relief* from his vulnerability to sentence," remanding to allow the People to revive previously-dismissed counts is appropriate. (*Ibid*., italics added.)

Unlike the defendant in *Collins*, who would have been free from any incarceration unless the People were allowed to revive the previously dismissed counts, a change in the location of defendant's incarceration does not reduce the term of defendant's sentence. Because the duration remains unchanged, *Collins* is distinguishable.[7]

The People's reliance on *People v. Bean* (1989) 213 Cal.App.3d 639 is similarly misplaced. In *Bean*, the defendant pleaded guilty to felony "petty theft with a prior," which the appellate court concluded was a nonexistent crime. (*Id*. at p. 645.) Though the defendant argued the court should allow him to withdraw his plea and reduce his conviction to misdemeanor petty theft, the appellate court concluded this would "deny the People their bargain." (*Ibid*.) Because "the intent of the parties was to expose defendant to the possibility of a state prison sentence," the court remanded the matter to allow the prosecution to reinstate charges which had been dismissed as part of the faulty plea agreement. (*Id*. at pp. 645-647.)

---

[7] We find *In re Sutherland* (1972) 6 Cal.3d 666, also cited by the People, distinguishable for the same reason. (*Id*. at p. 672 [remanding matter and reviving four dismissed counts after invalidating plea agreement because otherwise the defendant would have faced no punishment].)

12

The People seize on *Bean*'s use of the phrase "the possibility of a state prison sentence" to argue that defendant's sentence to county jail deprives them of their bargain. But the People take this phrase out of context. The Court in *Bean* used the phrase to distinguish a misdemeanor conviction from a felony conviction because, when *Bean* was decided, all felony sentences were served in state prison. Like *Collins*, the remand in *Bean* ensured the defendant did not receive lesser punishment than had been agreed upon.

We do not see that the benefit of the People's bargain in this case is diminished solely by defendant's incarceration in county jail instead of state prison. From a public safety standpoint, defendant will be separated from the public for the same amount of time as had he been sent to state prison.[8] We do not view the change in location of defendant's incarceration, standing alone, as undermining the purpose or effect of the People's bargain.

### III.  DISPOSITION

The judgment requiring defendant to serve his sentence in county jail is affirmed.

---

[8] We acknowledge the People's observation that defendant will not be subject to supervision after serving his sentence locally. We reject as speculative, however, the People's assertion that the prosecution would not have agreed to dismiss the section 12022.1 enhancement nor to suspend execution of the sentence were it known in 2011 that if executed, the sentence would be served in jail rather than prison. The assertion is particularly unpersuasive given defendant's eligibility for and entry into a drug treatment court program.

13

_____
Grover, J.

**I CONCUR:**


_____
Premo, Acting P.J.

*People v Reece*
**H038356**

MIHARA, J., Dissenting:

I respectfully dissent. In *People v. Moreno* (2013) 218 Cal.App.4th 846, petition for review pending, petition filed September 17, 2013, a separate panel of this court held that the provisions of the Criminal Justice Realignment Act of 2011 (Act) did not apply to a defendant, whose sentence was imposed prior to October 1, 2011, and executed after that date when his probation was revoked. Here, the trial court imposed sentence in April 2011, which was prior to the Act's operative date. However, his sentence was not executed until February 2012. For the reasons stated in *Moreno*, I would reverse the judgment.


 

_____
MIHARA, J.


*People v. Reece*
H038356

| Trial Court: | Monterey County Superior Court<br>Superior Court Case Nos.: SS101428A,<br>SS110117A |
| --- | --- |
| Trial Judge: | Hon. Sam Lavorato, Jr. |
| Counsel for Plaintiff/Respondent:<br>The People | Glenn Paul Pesenhofer<br>District Attorney, County of Monterey |
| Counsel for Defendant/Appellant:<br>Larry Thomas Reece | Dallas Sacher<br>Sixth District Appellate Program |

*People v. Reece*
H038356