Filed 10/14/15  P. v. Camerena CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN MAURICE CAMERENA,<br><br>    Defendant and Appellant. | E061192<br><br>(Super.Ct.Nos. RIF10006182 & RIF1302271)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney general, and Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Stephen Maurice Camarena of four counts of committing a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)), against two victims (counts 1-3, victim 1; count 4, victim 2); one count of committing a lewd act against a child aged 14 or 15 and more than 10 years younger than defendant (Pen. Code, § 288, subd. (c)(1), count 5, victim 2), and one count of committing a lewd act on a child under the age of 14 by force (Pen. Code § 288, subd. (b)(1), count 6, victim 3).  The jury further found that the offenses had been committed against more than one victim, in the meaning of Penal Code former section 667.61, subdivision (e)(5).  With respect to count 2, the jury found that the offense involved substantial sexual conduct in the meaning of Penal Code section 1203.066, subdivision (a)(8).[1]  The trial court imposed an aggregate state prison term of 48 years to life, consisting of a determinate three-year sentence (count 5), plus three indeterminate terms of 15 years to life to be served consecutively (counts 1, 4, and 6), and two concurrent terms of 15 years to life (counts 2 and 3).

On appeal, defendant contends that the trial court erred by admitting propensity evidence of prior uncharged acts of sexual abuse, allegedly committed when defendant was himself a minor.  He argues that the People failed to rebut the presumption of incapacity provided by Penal Code section 26, and in any case, the propensity evidence

---

[1] The jury found that count 3 *did not* involve substantial sexual conduct in the meaning of Penal Code section 1203.066, subd. (a)(8).  In briefing this appeal, both parties have described the jury as finding that count 3 *did* involve substantial sexual conduct in the meaning of Penal Code section 1203.066, subd. (a)(8).  As best we can determine from the record, the parties' briefing is simply erroneous in this respect.  The error is not, however, relevant to the matters defendant has raised on appeal.

should have been excluded pursuant to Evidence Code section 352.  Defendant also contends that, in imposing sentence, the trial court erroneously applied the current version of the Penal Code, rather than the former version in effect at the time of his offenses.  As a result of this error, according to defendant, the trial court believed it was required to impose life terms on counts 1-4, when in fact defendant was eligible for probation, requiring the judgment be vacated and the matter be remanded for resentencing.

We find no merit in defendant's contentions, and affirm the judgment in all respects.

## I.  FACTS AND PROCEDURAL BACKGROUND

Victim 1, who was born in 1993, is defendant's biological daughter.  She testified at trial that, beginning in about August 2004, while she was living with defendant, he repeatedly touched her in an inappropriate, sexual manner.  On multiple occasions, defendant touched her legs, breasts, buttocks, and vaginal area with his hands, over her clothing.  Later, at least once, defendant asked victim 1 to lie down on a bed with him, and when she did, he touched her breasts under her shirt, and digitally penetrated her vagina.  On another occasion, defendant exposed his penis to victim 1 and told her to touch it; when she hesitated, he grabbed her wrist and "guided" her hand to do so.  The abuse continued through about the middle of November 2004, when victim 1 moved to her mother's house.

Defendant is the uncle of victim 2, who was also born in 1993. She testified at trial that she was touched in a sexual manner by defendant many times between 2004 and 2009. The first time, she was around 10 years old, and lying in the bottom bunk of a bunk bed next to her cousin, victim 1. Defendant came into the room in the middle of the night, and spoke to her. He then lay down on the floor, next to the bed, reached his hand under her shirt, and touched her breast. He attempted to touch her vagina, but she "fidgeted," and he stopped and moved back to her breasts. After a while, he took her hand and placed it on his penis through the zipper of his pants—he told her that it was his thumb, which was swollen from an injury at work, and asked her to squeeze it. Victim 2 eventually got up to go to the bathroom; when she returned, defendant continued to touch her breasts.

Victim 2 testified that there were "multiple" other incidents when defendant touched her inappropriately—she estimated 20 times when she was 10 years old, and over 50 times when she was 14 or 15. She described two other specific examples, the first of which occurred when she was in middle school. She was sitting at a table doing homework, when defendant came into the room with his clothes on, but his penis outside of his pants. At first, "he was just . . . sitting there pretending to read the paper." Eventually, he lifted her shirt and put his mouth on her breast. He asked if she liked it; when she said no, he stopped. On another occasion, when victim 2 was 15, she was doing dishes when defendant came up behind her with his penis out of his pants, pressed against her, put his hand in her shirt and touched her breasts.

4

Victim 3, who was born in 1995, met defendant when she was about 10 or 11 years old; he was a friend of her mother. Victim 3 testified that on one occasion when she was 11 or 12 years old, she went for a ride with her mother, defendant, and another friend of her mother, with defendant and victim 3 seated in the back seat of her mother's truck. At some point, victim 3 and defendant were left alone in the back seat together. Defendant moved closer to victim 3, and tried to hold her hand, telling her "it's okay." He began rubbing her breast with his hand, over her clothing, despite her attempts to push him away. He then grabbed her hand, and forced her to touch his penis—she tried to pull her hand away, but could not. Victim 3 started to try to unlock the door of the vehicle to escape. Before she managed to do so, her mother returned, and defendant stopped. Victim 3 did not tell her mother what had happened, but was able to move the front seat of the car for the remainder of the ride.

The trial court also admitted into evidence, over defense objection, testimony by defendant's younger stepsister, D.T., regarding uncharged acts of sexual abuse committed when both she and defendant were minors. D.T., born in 1978, is seven and a half years younger than defendant, and they became stepsiblings when she was five years old. About six months after they became stepsiblings, defendant first touched her inappropriately. During the first incident, defendant touched her breasts, over her clothing, while they were alone in a bedroom together during a game of hide and seek.

D.T. testified that during approximately the next year and a half, similar incidents occurred, with defendant taking D.T. to secluded places during hide and seek games— she stated that he would "take me to the furthest place from where everyone was; we

would hide the best there." Once alone, defendant would initiate sexual conduct. The sexual conduct escalated from defendant touching D.T. over clothing to touching under clothing, then to defendant directing D.T. to touch his penis, then to "kissing his penis." On two occasions, when D.T. was around seven years old, and defendant was 14 or 15 years old, defendant attempted vaginal intercourse. D.T. testified that defendant would characterize the sexual conduct as playing a "trust game," telling her that he would "protect" her if she was more trustful, and telling D.T. that the behavior is "what stepbrothers do." Defendant repeatedly told her that she needed to "'keep this quiet, it's our secret.'"

Defendant testified at trial; he denied having ever touched victim 1, victim 2, victim 3, or D.T. in a sexual manner.[2]

## II. DISCUSSION

**A. Substantial Evidence in the Record Supports the Trial Court's Implied Finding that the Penal Code Section 26 Presumption of Incapacity Was Rebutted.**

Defendant contends that the trial court erred by admitting propensity evidence—specifically, D.T.'s testimony—because the prosecution failed to present clear and convincing evidence that defendant had the capacity to understand the wrongfulness of his conduct with D.T. at the time, as required by Penal Code section 26. In the alternative, he argues that no substantial evidence supports any implied finding that

---

[2] Additional details will be discussed below as necessary to address defendant's claims of error.

defendant had sufficient capacity to understand the wrongfulness of his conduct. We find no error.

Character or disposition evidence is generally inadmissible to prove a defendant's conduct on a specified occasion. (Evidence Code, § 1101, subds. (a), (b).) Evidence Code section 1108 creates an exception: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).)

Penal Code section 26 "creates a rebuttable presumption that a child under 14 is incapable of committing a crime." (*People v. Cottone* (2013) 57 Cal.4th 269, 280 (*Cottone*).) This presumption applies not only to charged offenses, but also applies where the prosecution offers propensity evidence under Evidence Code section 1108 regarding unadjudicated sexual offenses committed when the defendant was under 14. (*Cottone*, *supra*, at p. 281.) To overcome the presumption, the prosecution bears the burden of proving "by clear and convincing evidence that the defendant appreciated the wrongfulness of the unadjudicated sexual offense offered under [Evidence Code] section 1108." (*Id.* at p. 286.)

Whether or not a defendant had the capacity to appreciate the wrongfulness of his or her conduct, under Penal Code section 26, is a question of fact preliminary to the admission of evidence, determined by the trial court. (*Cottone*, *supra*, 57 Cal.4th at p. 285.) Here, the trial court made no explicit finding on the record regarding defendant's

7

capacity. Nevertheless, on appeal, "'"[w]e imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings."'" (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279.) "'[W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [quoting *People v. Jones* (1990) 51 Cal.3d 294, 314].)

First, we note the reason the trial court made no explicit findings regarding the defendant's capacity is that defendant never asked it to do so. The defense did object to admission of D.T.'s testimony as propensity evidence pursuant to Evidence Code section 1108. The stated ground for that objection, however, was not Penal Code section 26, but rather Evidence Code section 352. When the court asked what the defense's objection to admission of D.T.'s testimony was, defense counsel responded "Well, there's—under [Evidence Code section] 352 analysis." When the court sought clarification from defense counsel that the objection he was making was "a 352 argument," defense counsel responded "Yes. Other than that, Judge, I would submit." Because defendant's counsel made no objection based on the presumption of incapacity provided by Penal Code section 26, defendant forfeited the issue. (*See Cottone*, *supra*, 57 Cal.4th at p. 292 [holding that "*upon a defendant's timely objection*, the trial court must find by clear and convincing evidence that the defendant had the capacity to commit an unadjudicated juvenile offense before admitting that evidence under [Evidence Code] section 1108." (Italics added)].)

8

Even if the issue were not forfeited, however, we would still reject defendant's claim of error. (See *People v. Lewis* (1990) 50 Cal.3d 262, 282 [considering otherwise forfeited "claim on the merits to forestall an effectiveness of counsel contention"].) We cannot infer defendant's knowledge of wrongfulness from "the bare commission of the act itself," but nevertheless, "reference may properly be made to the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment." (*In re Tony C.* (1978) 21 Cal.3d 888, 900.) In this case, defendant not only touched D.T. inappropriately, but there is clear evidence in the record that he was hardly a guileless innocent, unaware of the wrongfulness of his conduct. From the beginning, defendant engaged in inappropriate sexual conduct with D.T. during games of hide and seek, during which he made sure he and D.T. were completely alone, and as far as possible from the other players. He repeatedly told D.T. that she needed "to keep this quiet, it's our secret." Moreover, the gradual escalation of defendant's conduct is reasonably considered a somewhat sophisticated grooming tactic. At least when viewed in the light most favorable to the judgment, as it must be in the present procedural posture, this evidence of preparation, method, and concealment is sufficient to support the conclusion that defendant had the capacity to understand the wrongfulness of his conduct with D.T., even though he was not yet 14 years old at the time of some of the incidents about which she testified.

In short, substantial evidence supports the trial court's implied finding that D.T.'s testimony was properly admitted as propensity evidence, because the presumption of incapacity provided by Penal Code section 26 was rebutted by clear and convincing

9

evidence.  As such, even if defendant had not forfeited the issue—he did—we would nevertheless find no error.

**B.  The Trial Court Did Not Abuse Its Discretion By Overruling Defendant's Evidence Code Section 352 Objection to the Propensity Evidence.**

As noted, the trial court admitted propensity evidence regarding uncharged acts of sexual abuse over the defendant's objection pursuant to Evidence Code section 352.  On appeal, defendant contends this ruling was an abuse of discretion.  We disagree.

Evidence Code section 352 provides the trial court with discretion to exclude even relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ."  It has been said that evidence is "substantially" more prejudicial than probative only if it "'poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." [Citation.]'"  (*People v. Lindberg* (2008) 45 Cal.4th 1, 49.)  The term "'prejudicial' means uniquely inflammatory without regard to relevance."  (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1138 (*Zambrano*), overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)  Put another way, prejudice in this context is "not the prejudice or damage to a defense that naturally flows" from probative evidence, but rather evidence that "'uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.'"  (*People v. Karis* (1988) 46 Cal.3d 612, 638.)  The principles of due process are not offended by the admission of relevant evidence unless it is so prejudicial as to render the trial fundamentally unfair.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta*).)  On appeal, we will disturb the

10

trial court's decision to admit evidence over an Evidence Code section 352 objection only if there is a clear abuse of discretion. (*People v. Cox* (2003) 30 Cal.4th 916, 959, overruled on other grounds in *People v. Doolin*, *supra*, at p. 421 & fn. 22.)

Especially given defendant's flat denial that he had inappropriately touched any of the victims of the charged offenses, D.T.'s testimony tending to show defendant's willingness to commit sexual offenses, and to do so against children in particular, was probative. (See *Falsetta*, *supra*, 21 Cal.4th at p. 912.) The circumstance that the uncharged offenses were committed many years before the charged offenses does not render them irrelevant, as defendant would have it. (See, e.g., *Cottone*, *supra*, 57 Cal.4th at p. 277-278, 286 [affirming admission of propensity evidence pursuant to Evidence Code section 1108 regarding uncharged offenses occurring 32 years before charged offenses].) Moreover, the various similarities between the charged and uncharged conduct tend to lend credence to the testimony of victim 1, victim 2, and victim 3, and correspondingly to shed doubt on the defense's theory of the case.

Further, there was nothing "uniquely inflammatory" about the uncharged offenses D.T. described. (See *Zambrano*, *supra*, 41 Cal.4th at p. 1138.) D.T.'s testimony was at least arguably "no stronger and no more inflammatory than the testimony concerning the charged offenses."[3] (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405, superseded by statute

---

[3] We acknowledge defendant's argument that D.T. was only five to seven years old at the time of the uncharged offenses, while the victims of the charged offenses were somewhat older children, thereby rendering it "significantly aggravating evidence." We disagree, however, that the trial court was obliged to view the evidence in that light, or that we should do so on appeal.

11

on other grounds as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) Indeed, it was arguably less inflammatory, in that the offender described in D.T.'s testimony was himself a minor, while the charged offenses were committed by an adult against children. (See *Graham v. Florida* (2010) 560 U.S. 48, 67 [noting that juveniles are, by reason of their immaturity, less culpable when compared to adults].) Nothing in the record suggests to us any reasonable probability that the jury disbelieved the testimony of victim 1, victim 2, and victim 3, but nevertheless convicted defendant based on the strength of D.T.'s testimony regarding the uncharged offenses, or that the jury's passions were inflamed by the evidence of defendant's uncharged offenses.

The trial court did not abuse its discretion by admitting the challenged evidence over defendant's objection pursuant to Evidence Code section 352.

## C.  Defendant Was Not Eligible for Parole Under Either Current or Former Penal Code.

Defendant contends that the trial court erred in sentencing him with respect to counts 1-4. He contends he was eligible for parole under the former version of the Penal Code applicable to those offenses, and the trial court erred by applying the current version, pursuant to which he was ineligible for parole. We find the trial court correctly found defendant to be ineligible for parole, under either the current or former version of the Penal Code.

As an initial matter, we reject the People's argument that the issue was forfeited by defendant's failure to object in the trial court. Defendant is not challenging a discretionary sentencing decision, but rather the trial court's application of the wrong law

12

in determining his sentence.  The forfeiture rule does not apply to unlawful sentences.

(*People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1533; *People v. Scott* (1994) 9 Cal.4th 331, 354.)

There is no question that under the current penal code, defendant is simply ineligible for probation.  (Pen. Code, § 667.61, subds. (b), (c)(8), (h).)  Defendant has not argued otherwise on appeal.

In 2004, however, when defendant committed the acts at issue in counts 1-4, Penal Code former section 667.61 provided that an offender in defendant's circumstances was ineligible for probation *unless* he qualified for probation under Penal Code section 1203.066, subdivision (c).  (Pen. Code, former § 667.61, subds. (b), (c)(7), (h).)  Under former section 1203.066, effective during the relevant time period, defendant was presumptively ineligible for probation, but could be placed on probation in the discretion of the trial court if it determined he had established all the factors set forth in former section 1203.066, subdivision (c).[4]  (Pen. Code, former § 1203.066, subds. (a)(8), (c).) These factors include, among other things, the finding that "[a] grant of probation to the defendant is in the best interest of the child."  (Pen. Code, former § 1203.066, subd. (c)(2).)

It has been held, however, that the use of the present tense verb "is" in Penal Code former section 1203.066, subd. (c)(2) indicates "a plain and clear legislative intent that

---

[4] Penal Code section 1203.066 has also since been amended, now providing that probation may not be granted under any circumstance where it is pled and proven that the defendant committed violations of Penal Code section 288 against more than one victim. (Pen. Code, § 1203.066, subd. (a)(7).)

13

the sentencing court must evaluate the circumstances existing at the time of sentencing in determining whether a grant of probation would be in the 'best interest' of the 'child' victim." (*People v. Wills* (2008) 160 Cal.App.4th 728, 737 (*Wills*).) Where, as here, the victims are no longer children at the time of sentencing, the sentencing court is unable to make such a determination "for the simple reason that there is no child." (*Ibid.*) In such circumstances, the sentencing court cannot find that all the factors set forth in Penal Code former section 1203.066, subdivision (c) are met, so it is not authorized to grant probation. (*Wills*, *supra*, at pp. 737-738.) The trial court therefore ruled correctly that defendant was ineligible for parole, even if it utilized incorrect reasoning in reaching that result. (See *Town of Atherton v. California High-Speed Rail Authority* (2014) 228 Cal.App.4th 314, 354, fn. 13 ["'In reviewing a trial court's decision, we review the result, not the reasoning.'"].)

Defendant concedes that *Wills* so holds, arguing only that the case was wrongly decided. *Wills* was decided by a different division within the Fourth District of the Court of Appeal, and we are not bound by it. (*People v. Gipson* (2013) 213 Cal.App.4th 1523, 1529.) "But '[w]e respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts [or other divisions] without good reason to disagree.'" (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529.) In

14

this case, we find no good reason to depart from the holding in *Wills*, and adopt its reasoning in full.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


_____HOLLENHORST_____
                                                    J.

We concur:


____RAMIREZ_____
                        P.J.

____CODRINGTON_____
                        J.